Masters v. Marsh.

GEORGE MASTERS, PLAINTIFF IN ERROR, v. ELLEN A. MARSH, DEFENDANT IN ERROR.

1. **Bastardy**: EVIDENCE. Upon a trial in the district court in a proceeding under the provisions of the statute for the support and maintenance of illegitimate children, it is not error on the part of the court to refuse to allow counsel for the defendant to cross-examine the prosecutrix as to what she testified to in her examination before the magistrate before whom the proceeding was instituted, her examination before the magistrate being certified up.

2. ———: ———. On such trial it was not error for the court to sustain the objection of counsel for the plaintiff to the question put to her on cross-examination by counsel for the defendant in the following words: Didn't you have intercourse with * * * there in that house about that time?" the time referred to being shown by the context to be about nineteen months before the birth of the child.

3. **Trial**: OFFER OF EVIDENCE. In order to predicate error upon the sustaining by the court of an objection to a question propounded to a party's own witness, the party must make an offer to prove the fact or facts sought to be elicited by the question.

4. ———: ACCOUNT BOOKS are admissible as evidence in an action only where they contain charges by one party against the other, etc.

ERROR to the district court for Fillmore county. Tried below before MORRIS, J.

*J. W. Eller*, for plaintiff in error, cited: *Spurgeon v. Clemmons*, 6 Neb., 307. *Young v. Makepeace*, 103 Mass., 53. *Altschuler v. Algaza*, 16 Neb., 631. *McCoy v. People*, 65 Ill., 439. *State v. Read*, 45 Iowa, 469. *Zweifel v. State*, 27 Wis., 396.

*John P. Maule*, for defendant in error, cited: 1 Green-leaf Evidence, 514, 515. *Duffies v. State*, 7 Wis., 567. *Eddy v. Gray*, 4 Allen, 435. *Paull v. Padelford*, 16 Gray, 263. *Commonwealth v. Moore*, 3 Pick., 194.

COBB, J.

The plaintiff in error was tried on the complaint of Ellen A. Marsh, found guilty by the verdict of a jury, and adjudged to be the reputed father of the bastard child of said Ellen, and to stand charged with the maintenance of said child in the sum of five hundred dollars, and to pay the costs of suit. To the proceedings in the trial court he assigns sixteen errors.

The first assignment is, that the court erred in sustaining the objection of counsel for the complainant to the following question put to the complaining witness upon her cross-examination.

"Q. Did you not state in your examination before Mr. Dimock, justice of the peace, that it was in the latter part of November that you went and looked at the book to see the date the lard was bought." The third and fourth errors assigned are for sustaining the objections of counsel for complainant to questions of the same character put to the same witness, all referring to her statements made before the examining magistrate when on oath upon her original examination. These three assignments may

then be considered together. The sole object of asking these questions was to obtain from the witness either an admission or a denial that she had made such statements in her examination before the magistrate. In ordinary cases such cross-examination for such purposes is doubtless admissible, but in bastardy cases the reason or necessity for such examination does not exist. Section 1 of chapter 37, Comp. Stats., provides that, upon the arrest of any person accused of being the father of a bastard child, the justice " shall examine the complainant under oath respecting the cause of her complaint, and such accused person shall be allowed to ask the complainant, when under oath, any question he may think necessary for his justification; all of which questions and answers, together with every other part of the examination, shall be reduced to writing by the justice of the peace," etc. Section 5 of the same chapter provides that, " at the trial of such issue the examination before the justice shall be given in evidence," etc. It appears from the record that this course was pursued in the case at bar, and the testimony of the complaining witness as given before the magistrate, having been taken down in writing and produced on the trial, it would have been a waste of time, to say the most of it, on the part of the court, to have permitted the defendant's counsel to cross-examine the complainant as to what she testified to before the magistrate. If her statements before the jury were inconsistent with those made before the magistrate, such inconsistency would furnish a fair ground for invalidating her testimony and of attacking her credit before the jury, and no cross-examination was necessary for that purpose.

The second error assigned is, the sustaining by the court of the objection by counsel for complainant to the following question put to complaining witness on her cross-examination, by defendant's counsel:

" Q. Didn't you have intercourse with Tot Conner there in that house about that time ? "

By reference to the context, it appears that the house referred to was Roper's restaurant or eating house, at Geneva, and the time referred to was the time of the county fair " about two years ago." The trial took place on the 6th day of November, 1884. The child was born on the 7th day of June, 1884. It is conceded, and must be, that the defendant may show by the complainant, or any other witness, that she had intercourse with any man, other than the defendant, at or about the time when the child must have been begotten, according to the usual course of nature. The period of gestation may be safely stated as a general proposition at from two hundred and fifty-two to two hundred and eighty-five days. Allowing the greatest latitude of enquiry I think it should be confined to a period of time between the lowest number of days above stated and that of three hundred days before the birth of the child. The time referred to by the question which we are now considering, " about two years ago"—two years before the 6th day of November, 1884—was about nineteen months before the birth of the child. If the prosecutrix had admitted that she had intercourse with the person named at that time, it would have had no tendency to disprove the charge that the defendant was the father of her child. The 3d, 4th, and 5th assignments of error fall within the above facts and reasoning, and hence need not be specifically stated. The above remarks will also apply to the 10th assignment of error. Under this head counsel groups five questions put to the witness Walters, to the giving of which the court sustained the objection on the part of the complaint that the same were irrelevant and immaterial, the time not being fixed. The purport of all these questions is, whether the witness had seen the prosecuting witness together with a young man named Tot Conner, in the night time, go into an unoccupied house in the village of Exeter. In no instance was the time fixed, so that any answer indicated by the frame of the question would have been material, or

tended to prove any fact disproving the charge that de-
fendant is the father of the child.    In this connection it is
proper to say that this witness, John Walters, was a wit-
ness called on the part of the defendant.    It may be said
to be the settled law of this state, that in order to predicate
error upon the sustaining by the court of an objection to
a question propounded to a party's own witness, the party
must make an offer to prove the fact or facts sought to be
elicited by the question.    See *Mathews v. State, ante* p.
330.

This rule seems to have been lost sight of by counsel, as
it was especially applicable to the questions which we are
now examining.    Even had the time been fixed, when the
questions suppose that the prosecuting witness may have
been seen entering the unoccupied house with the young
man named, to be at or about nine lunar months before the
birth of the child, the facts indicated by the question un-
accompanied by other facts would have been of but little
if any value as casting doubt upon the parentage of the
child, while if followed by an offer to prove other and ad-
ditional facts, such as their being alone, the length of their
stay, etc., they might have been of considerable value.

The sixth error is, "that the court erred in sustaining
the objection to the following question asked of Charlotte
J. Marsh, mother of plaintiff, on her cross-examination :

"Q.    Did you not know of her (Ellen, the plff.) having
an abortion before she was in the family way with this
child "

This witness had testified to nothing in her examination-
in-chief, upon which the above question could be consid-
ered cross-examination.    Besides she had just testified on
her cross-examination that she did not know of her daugh-
ter " ever being in a family way before this time," and it
was utterly irrelevant to the inquiry in hand whether she
had had an abortion or not.

The 7th assignment of error is, " that the court erred

in sustaining the objection of counsel for the prosecutrix to the following questions asked John Linden on his cross-examination:

"Q. 1. When she told you, how did this conversation come up, when she told you that she was in the family way?

"2. What did you say when she told you that, that she was in the family way?

"3. Did she tell you once before that she was in the family way?"

The first two of these questions were objected to by counsel for complainant for the reason that it was not cross-examination, and was irrelevant, which objection was sustained. In this I think the court erred. It certainly was cross-examination in view of the object for which this witness was placed upon the stand, and of his examination-in-chief. There were doubtless such circumstances of familiarity and opportunity existing between this witness and the prosecutrix as to render it necessary in the opinion of her counsel to call him as a witness on her side, and by his testimony negative such conclusions as might be drawn from these circumstances. In his examination-in-chief he had negatived these circumstances, but he had testified to a condition of innocent familiarity between himself and the prosecutrix, not only quite unusual in our state of society, but which, as I view it, rendered every communication and conversation between them at about that period a proper subject of cross-examination and criticism. Yet, nevertheless, I do not think the said error sufficiently prejudicial to the defendant to call for a reversal of the judgment for the sustaining of said objections. The witness denied any act of intercourse with the prosecutrix, and it is not to be presumed that with any latitude of cross-examination he would have reversed his testimony in that respect. Indeed, there is no logical sequence between any answer which he could have been expected to give to either of the questions

and the capital fact in the case—the parentage of the child.

As to the third of the above questions, it was repeated in a slightly modified form, allowed by the court, and answered by the witness, which answer completely covers and satisfies the question in its original form.

The 8th error assigned arises upon the sustaining by the court of the objections of counsel for the plaintiff to three questions put by counsel for the defendant to Francis Marsh, father of the plaintiff, and a witness in her behalf, on his cross-examination.

"Q. 1.    Did you or did you not tell Tom Powell, then in your meat shop, on the day that Masters was arrested, or about that time, that Masters was the father of that child, and that he took the girl Ellen away from the wash-tub and done it to her three times in about fifteen minutes?

"2.    Did you or did you not in that conversation tell Mr. Powell that Mr. Masters had intercourse with your daughter three times in Dogtown, or words to that effect?

"3.    When did you first find out or learn that your daughter was in the family way with this child?"

In her examination-in-chief, the complaining witness had stated that she identified the day when the child was begotten by the fact that on that day a certain item of account was charged to the defendant on her father's account books.    This witness, her father, was called to testify as to the day upon which that entry was made in his books.    His examination-in-chief was confined to that point alone, except that he testified that he saw the defendant on that day "just as he was going away."    It will thus be seen that the questions objected to and ruled out were not only not legitimate cross-examination, but utterly irrelevant and inconsequential so far as the serious investigation of the issue involved in the case was concerned.

The 9th, 11th, 12th, 13th, 15th, and 16th errors assigned are each identical with some one of those already consid-

ered and found not well taken, and it would be but a mere repetition of words to examine them each in detail, which time and space admonish me not to do.

The 14th assignment of error is, however, of a very different character. It is as follows:

" 14th. The court erred in admitting in evidence against objections the entries of C. C. Vanaum's books."

The prosecutrix had testified on her examination-in-chief that the defendant was the father of her child; that he had intercourse with her five times, the last time being on the 25th day of September, 1883, in her father's house in the village of Exeter. She identified the date by the fact that on the same day of the last intercourse with her the defendant also bought some lard of her mother, which was charged to him under that date in her father's account books. That when she began to fear that she was in the family way, she went and examined the books, found the charge, and fully identified the date of the charge as the day on which the child was begotten, etc. After the case was rested on the part of the plaintiff, the defendant took the stand as a witness in his own behalf, and testified that he was at his own home engaged in threshing on the said 25th day of September, 1883, and was not at the village of Exeter at all on that day. Witness professes to account for where he was and what he was doing during the whole of every day, from Sunday prior to the 25th day of September to the 16th day of October, following. Among other things he testified that on Friday, which, according to his previous statement was the 28th day of the month, he " went again to help Mr. Hussman thresh, and it set in windy and cold and I quit, and that is all I helped him." On his cross-examination he adhered to the date of his helping Hussman thresh. I suppose it must have been for the .purpose of contradicting this statement of the defendant by showing that Mr. Hussman marketed his last grain on the 27th, and hence must have been done

30

threshing before the 28th, that plaintiff afterwards called A. B. Vanaum, bookkeeper to C. C. Vanaum, a grain buyer of Exeter, and offered the books of said C. C. Vanaum showing an entry under date September 27th, as follows:

" Hussman Wheat.

" 4200.

" 1170,                                    3030 Roster."

The books were received in evidence over the objection of the defendant. Upon cross-examination the witness stated that aside from the entry in the book he had no recollection of the fact or date of the delivery of the wheat. He " only goes by the date in the book."

Section 346 of the civil code provides that, " Books of account containing charges by one party against the other, made in the ordinary course of business, are receivable in evidence only under the following circumstances, subject to all just exceptions to their credibility : *First.* The books must show a continuous dealing with persons generally, or several items of charges at different times against the other party in the same book. *Second.* It must be shown by the party's oath, or otherwise, that they are his books of original entries. *Third.* It must be shown in like manner that the charges were made at or near the time of the transaction therein entered, unless satisfactory reasons appear for not making such proof. *Fourth.* The charges must also be verified by the party or the clerk who made the entries, to the effect that they believe them just and true, or sufficient reason must be given why the verification is not made."

The above section embraces the only legal authority known to the writer for the reception of books of account as evidence in legal proceedings, and it is seen at the merest glance that this authority to receive such books in evidence is confined to " Books of account containing charges by one party against the other." I cannot conceive

of a book account or an account book being properly re-
ceivable in evidence in any case under the chapter provid-
ing for the support of illegitimate children, but if such
case ever should arise it will certainly be where the book
is kept by or the charge made by or against one or the
other of the parties to the suit.

If the account books of Mr. Vanaum are legal evidence
in this suit between these parties for the support of this
illegitimate child, it then follows that the private account
books of every person in the county who keeps account
books, for whatever purpose, could by the compulsory pro-
cess of the law be brought into court and subjected to the
espionage of the parties to any pending litigation.    It mat-
ters not that in the case at bar the books of Mr. Vanaum
appear to have been voluntarily produced.

I therefore reach the conclusion that the district court
erred in admitting the said account books in evidence, and I
see no escape from the conclusion that such error is fatal
to the judgment, while I do not think that the books would
have proved any fact of the least value in the case had
they been properly admitted, yet the party presenting them
would scarcely be permitted to escape the consequence of
an erroneous ruling on that ground, nor can this court risk
the consequences of the precedent which it would set, should
it hold such error to be without prejudice.

The judgment of the district court is therefore reversed
and the cause remanded for further proceedings in accord-
ance with law.

REVERSED AND REMANDED.

THE other judges concur.