CHARLES SANG, PLAINTIFF IN ERROR, V. RACHEL BEERS, DEFENDANT IN ERROR.

1. **New Trial:** DISCRETION OF COURT. Motion for a new trial, whether the grounds therefor are that the verdict is against the weight of evidence, or for accident or surprise, newly-discovered evidence, or for a like cause, are addressed to the sound discretion of the court, and in such cases a decision of the district court in granting a new trial will not be reversed unless there has been an abuse of such discretion.

2. ——: DECISION OF TRIAL JUDGE FINAL. Upon a motion to set aside the verdict of a jury in which questions of fact are involved, the court hearing the motion becomes the ·judge of such questions of fact and his decision thereon must be final unless clearly and manifestly wrong.

3. **Bastardy**: EVIDENCE. Upon a trial in the district court in a proceeding under the provisions of the statute for the support and maintenance of illegitimate children, evidence that plaintiff has had intercourse with other men before the birth of the child, and clearly outside of the period of gestation, is immaterial to the issue and therefore inadmissible in evidence. Evidence of such intercourse is admissible only for the purpose of showing that another than the person charged is the father of the child.

ERROR to the district court for Dodge county. Tried below before POST, J.

*E. F. Gray* and *W. H. Munger*, for plaintiff in error.

*Frick & Dolezal*, for defendant in error.

REESE, J.

This is an action in which plaintiff in error is charged with being the father of an illegitimate child of defendant in error. Two trials were had in the district court. The first resulted in a verdict acquitting plaintiff in error of the charge. On motion of defendant in error the verdict was set aside and a new trial granted. On the second trial plaintiff in error was adjudged guilty and charged with the maintenance of the child. He prosecutes error to this court.

It is claimed that the district court erred in setting aside the first verdict and granting a new trial. The grounds alleged in the motion therefor may be briefly stated as follows:

1st. The verdict was contrary to law.

2d. It was not sustained by sufficient evidence.

3d. It was against the weight of evidence.

4th. Misconduct of defendant (plaintiff in error) in treating the jurors to intoxicating liquors during the term of court at which the cause was tried and preceding the trial of the cause, and systematically associating himself with them after they had been drawn as jurors.

5th.   Surprise which ordinary prudence could not have guarded against.

6th.   Newly-discovered evidence.

7th.   Irregularity of the jury, by which defendant in error was deprived of her full quota of peremptory challenges.

Affidavits were filed in support of the fourth, fifth, sixth, and seventh grounds of the motion and to which counter affidavits were presented.   Those filed on behalf of defendant in error consisted of her own, her attorney, and five other persons.   Those of plaintiff in error consisted of his own and six other persons.   Many of these affidavits are quite lengthy, and cannot be given in full without extending this opinion to much greater length than would be profitable.   It must suffice to give a very brief epitome of what might seem to be some of the leading facts presented therein.

The affidavit of J. E. Frick, Esq., one of the attorneys for defendant in error on the trial, is to the effect that he was one of the attorneys for defendant in error in the preliminary proceedings before the county judge in the month of March, 1884, ending on the first day of April.   That on or about the 31st day of March, 1884, he, as attorney for defendant in error, entered into a written stipulation with the attorneys for plaintiff in error whereby it was agreed that a certain sum of money was to be paid by plaintiff in error to defendant in error upon condition that, upon examination by a physician, it should be found that defendant in error was pregnant, and that her child should be born alive and remain alive for one week ; but in case the child should be born after the 15th day of June, 1884, then nothing should be paid, and plaintiff in error should be discharged.   . By this stipulation it seems to have been conceded (at least so understood by the attorneys for the defendant in error) that plaintiff in error was the father of the child if it should be born on or before the date

named.    This stipulation, however, was rejected by defendant in error as providing for an inadequate sum. That on the trial it was shown that the child was born prior to 15th of June, 1884, yet plaintiff in error testified that the last time he had sexual intercourse with defendant in error was the last of May, 1883.    That relying on the partially admitted fact of the sexual intercourse within nine months prior to the date given, he had not introduced any witnesses except defendant in error and her father, and that the testimony of plaintiff in error was a surprise that ordinary prudence would not have guarded against.    Also that at the time of the trial he had no knowledge of the existence of certain other witnesses, residents of Howard county, by whom it could be shown that the parties were frequently together after the time stated as the last by plaintiff in error; and that owing to the sickness of himself at the time of the trial, he did not call to mind the stipulation referred to; that some time prior to the trial he had been informed by counsel for plaintiff in error that it had probably been lost or destroyed.    He also averred that after the petit jurors had been drawn plaintiff in error had been unduly and unusually intimate with them, drinking intoxicating liquors with and treating them frequently.    That on the trial he had exhausted his peremptory challenges and had been compelled to retain some jurors who denied their bias for plaintiff in error, but who were particularly friendly to him.

Defendant in error made an affidavit in which she corroborated that of Mr. Frick; set out in detail the proposed testimony of absent witnesses, and that she had no knowledge or intimation that the paternity of the child would be denied by plaintiff in error.    She also denied any knowledge of the alleged improper intimacies between plaintiff in error and the jurors, or of the knowledge of one Hanson of certain facts stated in his affidavit.

The affidavit of O. R. Hanson was to the effect that

during the summer of 1883, he resided near the home of defendant in error, and up to and as late as July 6th saw plaintiff in error and defendant in error together and saw plaintiff in error going into and coming out of the house of defendant in error at late hours of the evening, but that he did not communicate his knowledge to defendant in error or her attorneys until after the trial.

Robert Gregg made an affidavit that he was acquainted with plaintiff in error, and the jurors to whom the case was tried, and that immediately preceding the trial he saw plaintiff in error with two of the jurors in a certain saloon in Fremont sitting at a table and drinking. That prior thereto, and soon after the names were selected from which to draw the jurors for the term of court, he saw plaintiff in error in the office of the county clerk inspecting the list so selected, and that the jurors selected and afterwards drawn from Fremont precinct were all friendly to plaintiff in error. That after the jurors were drawn plaintiff in error was often seen with them in the city of Fremont, and appeared intimate and friendly with them. That these facts were not communicated to defendant in error nor her counsel until after the trial.

The affidavit of Pelig Card states that on the evening last preceding the commencement of the trial of the cause, he saw plaintiff in error with one of the regular panel of jurors for the term, and who sat in the cause on trial, at a saloon in Fremont drinking intoxicating liquors together, and that they finally became intoxicated, and the juror was conducted to his hotel and room by affiant, who put him to bed in an intoxicated condition. That during the week of court — from the 2d to the 7th of February, 1885 — the affiant saw a large number of the petit jurors, while acting as such, in the saloon referred to, drinking liquor, plaintiff in error being with, and drinking with, them. That he did not communicate the facts stated to counsel for defendant in error until after the trial.

24

James Murray, the county judge of Dodge county, made an affidavit in which he corroborated the statements of others as to the association, familiarity, and drinking with jurors immediately preceding the trial. Affiant also makes a detailed statement of a conversation with one Parish, who was not retained on the jury, we believe, but upon a denial of bias, was challenged peremptorily. A part of this conversation was, under a pledge of secrecy, communicated to counsel for defendant in error before the trial, but as he had this knowledge and of the means of showing the facts and declined to use them, he could not complain therefor, and that part of the subject will not be noticed further.

B. F. French also made an affidavit in which he deposed that he was the proprietor of the European Hotel in Fremont, and that upon the occasion testified to by affiant Card, he saw plaintiff in error and the juror referred to in the saloon named, and that they both became intoxicated and drunk; the juror being so helpless as to require care and assistance in getting to his room, which was in the hotel of affiant.

Mr. Dolezal made an affidavit as to his want of knowledge of any of the facts sworn to by the witnesses; the case being under the especial charge of Mr. Frick.

The counter affidavits filed may be briefly summarized as follows :

M. Dudly, the keeper of the saloon referred to denies having heard the conversation referred to by Murray, and says no such language was used at the time and place stated.

Mr. Plambeck, one of the jurors referred to in the affidavit of Gregg, says the statement that he was in the saloon drinking with another juror and plaintiff in error is untrue.

John Ferrell, the juror referred to, who sat in the cause, made an affidavit denying the statements of Gregg that he with Plambeck and plaintiff in error was drinking

in the saloon referred to on the evening preceding the trial; that he had no conversation with plaintiff in error before the return of the verdict, nor sat at any table drinking with him.

C. B. Veazy, the foreman of the jury to whom the cause was tried, deposed that the decision was made by the jury on the second ballot, which was unanimous for acquittal, and that the verdict was agreed upon within five or ten minutes after the jury retired.

Plaintiff in error made an affidavit in which he negatives in detail all the statements made by affidavit on the part of defendant in error as to consorting and drinking with jurors; that his notice of the selection of names for jurors was casual, and by reason of his attention being called to the matter by the clerk, he being in the office at the time, but without any purpose of pursuing an improper course toward the jury; that he then believed, and still believes, there was nothing wrong or improper in his action; that he had been a resident of the county of Dodge for sixteen years, much of which time he had been in office, as mayor of the city of Fremont, county clerk of the county, and state senator, and that he was acquainted with substantially all the citizens of the county, but that no more intimate relations existed between him and the jurors named than with many others; and that his treatment of the jurors referred to has been in no way different since they were drawn as jurors from what it was before that time.

Alonzo Parish, the challenged juror, by an affidavit denied the conversation testified to by Murray; that he had no acquaintance with Murray; that he did not see him, to recognize or know him, in the saloon, and that he had never been intoxicated in the saloon referred to, or elsewhere.

Upon these affidavits, did the district court abuse its discretion in granting a new trial? We cannot so hold.

"Motions for a new trial are addressed to the sound discretion of the court, and this rule prevails whether the ground of the motion is that the verdict is against the weight of evidence, or for accident or surprise, newly discovered evidence, or a like cause; but this discretion is a legal discretion." *Tingley v. Dolby*, 13 Neb., 371. There is a very large discretion given to trial judges in the matter of granting new trials, which will not be interfered with unless it be clearly shown that some legal right of the party against whom the order for a new trial is made has been disregarded. *M. P. R. R. Co. v. Hays*, 15 Id., 224.

By an inspection of the affidavits presented to the trial court, it will be seen that there was a direct conflict in the evidence. For the purposes of the motion, the trial court becomes the judge of all questions of fact, and his decision thereon will not be disturbed unless clearly and manifestly wrong.

Without stopping to inquire whether the proposed testimony of Mr. and Mrs. Marshall, and Mr. Hanson would be cumulative, or whether sufficient diligence was shown to excuse the failure to produce the testimony on the first trial, it is sufficient to say that if the trial judge believed the testimony of Gregg, Card, French, and Murray, as to the conduct of plaintiff in error toward the jurors, notwithstanding its contradiction and explanation as furnished by the affidavits on his part, that would be sufficient; for, of this testimony he was, and must be, the sole judge.

Again, as bearing upon the question of surprise and want of diligence, it might be well to observe that the question as to whether improper intercourse had been had between the parties to the suit was not one of the facts submitted to the jury. This was conceded by plaintiff in error. The only contention upon that subject by plaintiff in error was that he had ceased indulgence in the unlawful commerce with defendant in error some two months prior to the commencement of the usual period of gestation, pre-

vious to the birth of the child.   Now, considering the fact that the intercourse had actually existed, and the further fact that an agreement of settlement had been partially made, although even without authority from plaintiff in error, and without legal force, yet we could not hold that the district court erred and abused its discretion in giving a new trial, if given for that reason alone.   *White v. Church,* 5 Conn., 187.   *Marsh v. Weber,* 13 Minn., 99.   Hilliard on New Trials, 6, *et seq.*

It is next contended that the court erred on the second trial in excluding the deposition of one C. S. Curtis, which was offered by plaintiff in error to prove a single act of intercourse with a stranger about the 15th to the 20th of May, 1883.

It is shown by the testimony that the child of defendant in error was born on the 17th day of May, 1884, twelve months after the alleged intercourse with the stranger.   We know of no rule of evidence by which this deposition would be admissible.

In *Masters v. Marsh,* 19 Neb., 458, it is said by Judge COBB, in writing the opinion of the court, that the "defendant may show, by the complainant or any other witness, that she had intercourse with any man, other than the defendant, at or about the time when the child must have been begotten according to the usual course of nature. The period of gestation may be safely stated as a general proposition at from 252 to 285 days.   Allowing the greatest latitude of inquiry I think it should be confined to a period of time between the lowest period of time above stated and that of 300 days before the birth of the child."

If the fact of such intercourse were proven it could shed no possible light upon the one question to be settled by the trial—the paternity of the child—as it was only the one act, entirely outside of the period of gestation, which was sought to be proven.   But it is claimed that the testimony was admissible as tending to impeach the credibility of defendant in error, she having testified on cross-examination that she had

had sexual intercourse with no other man. This could not be, for, as we have seen, the question was an immaterial one, and whether decided in the affirmative or negative could not aid in the solution of the issue on trial. This being true, the well-established rule stated in *Railroad Co. v. Linn*, 15 Neb.; 234, that "a party who on cross-examination of a witness asks him an immaterial question is concluded by his answer and cannot call another witness to impeach him," would still exclude the deposition.

It is next contended that the court erred in overruling the motion for a new trial wherein it is alleged that one J. J. Graham, one of the trial jurors, was not an elector of the county at the time of the trial, and was therefore incompetent.

In *Hickey v. The State*, 12 Neb., 492, Judge MAXWELL, in writing the opinion, quoted with approval the following from *Rockwell v. Elderkin*, 19 Wis., 368 : "If the objection had been taken before the trial, by way of challenge, it would have prevailed upon strictly technical grounds, but after the trial it was too late. It is an objection that does not affect the impartiality or intelligence of the juror, and furnishes no presumption against the justice of the verdict."

Plaintiff does not furnish an abstract of the testimony of the juror on his *voir dire* examination—whether taken by a reporter we do not know—but affidavits were made and filed in the district court after the verdict by which the substance of the testimony is, perhaps, shown. Why this departure from the usual practice was made necessary does not appear. But passing all other questions, we must hold that the decision of the trial court on the questions of fact presented by the affidavits must be final. The juror showed that he fully believed that he was a qualified elector of the county; that he had voted at the preceding general election, and had been a resident of the county more than forty days. Other witnesses testified to similar facts. There is

no question as to the juror being a citizen of the state, and to the mind of the writer there is as little doubt that he was a competent juror.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.