CHRISTIANA SOUCHEK, APPELLEE, v. ERNEST KARR, APPEL-
LANT.

FILED MARCH 7, 1907. No. 14,954.

1. **Bastardy: EVIDENCE.** In a prosecution for bastardy, where the testimony of the complainant shows that the first act of intercourse with the defendant was less than 252 days before the birth of the illegitimate child, the burden is upon the complainant to establish by a preponderance of the evidence that the child alleged to have been begotten by such intercourse was of premature birth.

2. **Criminal Law: PRACTICE.** In such case, evidence tending to show the premature birth of the child should be offered in chief.

3. ———: EVIDENCE: WITNESSES: COMPETENCY. A professional nurse, having 15 years' experience in obstetrical cases, and who assisted at the birth of a child, is competent to testify as to her opinion whether or not the child was fully developed at the time of its birth.

APPEAL from the district court for Seward county: ARTHUR J. EVANS, JUDGE. *Reversed.*

R. D. *Sutherland,* S. A. *Searle* and *M. D. Carey,* for appellant.

R. S. *Norval* and J. J. *Thomas, contra.*

OLDHAM, C.

This was a proceeding in bastardy, wherein the complainant, Christiana Souchek, alleged that defendant, Ernest Karr, was the father of her illegitimate child. There was a trial of the issues to the court and jury, verdict of guilty, and judgment on the verdict. To re-

verse this judgment the defendant has appealed to this court.

The evidence introduced in chief in support of the prosecution was, in substance, that for several years prior to the acts of sexual intercourse, which preceded and occasioned the birth of her child, the prosecutrix had resided on a farm with her parents in Nuckolls county, Nebraska; that in the spring of 1904 she was employed as a domestic in the family of Mr. Weaver in the village of Deweese, Clay county, Nebraska; that on the 23d day of May, 1904, the defendant began to keep company with her and accompanied her home from a party, which had been held at the residence of one Mr. Titus in the village of Deweese; that in the early part of June following the defendant had intercourse with the complainant, and that acts of intercourse were repeated at five or six different times during the month of June; that on the 29th day of December, 1904, the prosecutrix was delivered of a living child at the industrial home in Milford, Seward county, Nebraska, as a result of her intercourse with the defendant; that after the birth of the child the complainant had remained in the home at Milford until the 27th day of April, 1905, when the present suit was instituted. While there was some testimony offered tending to show the association of defendant with complainant during the month of June, 1904, no evidence was introduced in any manner tending to show that the child, which was born on December 29, scarcely seven months after the first act of intercourse alleged to have been had with defendant, bore any evidence of having been of premature birth. There was some variance in the statements made by the prosecutrix at her examination before the justice of the peace and in her testimony at a former trial of the case in the district court for Seward county, as to the particular times and places at which her alleged intercourse with defendant occurred. This variance, however, was not so material as to absolutely discredit the testimony of the complainant.

Defendant, on his part, introduced testimony tending to show contradictory statements that complainant had made as to the paternity of her child, and also evidence tending to show her association with another young man in the months of April and May of the year 1904, and on his own behalf the defendant denied all acts of intercourse with complainant. The defendant also offered as a witness in his behalf Miss Margaret Kealy, who testified that she had been a nurse for about·18 years, principally in obstetrical cases; that during that period she had attended on 150 or more of such cases; that she was superintendent of the industrial home at Milford for three years, and attended the prosecutrix at the time of the birth of her child. She also testified that the delivery of the child was natural; that the child at the time. of its birth appeared strong and healthy; that it weighed about six and one-half or seven pounds, and that it cried and looked like an ordinary child at birth. This witness on cross-examination, testified as to her years of experience in obstetrical cases and that she had read books on obstetrics, prepared and published for the use of professional nurses, but that she had never studied medicine and surgery and had never read any "standard works on obstetrics that the doctors read." With ·this foundation laid, defendant offered to prove by the witness that the ordinary period of gestation was about 280 days, and also offered to prove that in the opinion of the witness the child of the complainant was a fully developed nine-months' child at the time of its delivery. Both of these offers were denied by the trial court, and the complainant in rebuttal was permitted to introduce the evidence of Doctor Loughridge, who was the medical attendant of the Milford institution, and who testified that he had attended on complainant and her child a short time after its birth, and that at first he believed from the appearance of the child that it was a fully developed nine-months' child, but that perhaps a month afterwards, because of its slow growth, he became impressed with the idea that it

may have been of premature birth, probably of from seven and one-half to eight months' gestation. This testimony was admitted over defendant's objection that it was testimony in chief, and not proper rebuttal evidence.

Defendant requested the trial court to instruct the jury that, as the testimony of the complainant showed the birth of the child within seven months of the first alleged act of intercourse with defendant, the burden was upon the prosecutrix to establish the fact that the child was of premature birth. This instruction was refused, and in its stead the court gave the following direction: "The jury are instructed that one of the questions for the jury to determine in this case is whether the child was carried by its mother the usual time before its birth, or whether it was prematurely born. This question you must, of course, determine from the evidence, and if you find from the evidence that the child was carried by its mother for the full and usual period preceding its birth, instead of about seven months, as claimed by the plaintiff, then your verdict should be for the defendant. If, on the other hand, however, you find from the evidence that the child was not carried by its mother for the usual period preceding its birth, and only for the length of time testified to by the mother, and that the defendant is the father of said child, then your verdict should be for the plaintiff." We have stated all the objections called to our attention in defendant's brief collectively, because they are all closely related to each other, and all bear directly on the question as to whether or not the defendant has been properly adjudged guilty under the forms of law and established rules of practice governing this kind of proceedings. While it is true that a bastardy proceeding is civil rather than criminal in form, and that it is sufficient to establish the paternity of an illegitimate child by a preponderance of the evidence, or even by the uncorroborated testimony of the prosecutrix, yet this is a form of action fraught with serious consequences to the defendant, if he be adjudged guilty, because of the denial

of any substantial right vouchsafed to him in the statute fixing his liability, or because of an improper application of the rules of evidence under the issues.

It is indisputable from the record in this case that, if the defendant is the father of the complainant's child, as a result of the intercourse to which she testifies, the child must have been one of premature birth. In *Masters v. Marsh*, 19 Neb. 458, it was said by COBB, J., in delivering the opinion of the court: "The period of gestation may be safely stated as a general proposition at from two hundred and fifty-two to two hundred and eighty-five days. Allowing the greatest latitude of inquiry I think it should be confined to a period of time between the lowest number of days above stated and that of three hundred days before the birth of the child." This doctrine has been followed and quoted with approval in *Sang v. Beers*, 20 Neb. 365, and *Stoppert v. Nierle*, 45 Neb. 105.

Now under this rule established in these cases, the defendant in a bastardy proceeding is not permitted to show intercourse between complainant and other men outside of the period of gestation as above defined, unless such offer is coupled with proof of the premature birth of the child. Consequently, if complainant's testimony had tended to show intercourse with the defendant within the period of gestation, the court would have excluded any offer on the part of defendant to show her intercourse with other men during the month of June, 1904, because such period is less than 252 days before the birth of the child. Since this is a rule limiting the right of the defendant, we can see no reason why the reverse of the rule should not be applied to the complainant, and why, if she testifies to intercourse with defendant outside of the ordinary period of gestation, she should not be required to connect her own testimony with proof of the fact that the birth of the child was without the period. Under this view of the case, the testimony of Dr. Loughridge was evidence in chief, and the objection that it was not proper rebuttal evidence should have been sustained. In this

view of the case it seems to us that it was prejudicial error for the trial court to refuse an instruction, which clearly, unequivocally and emphatically placed the burden upon the complainant of showing that her child was of premature birth, because her right of recovery against the defendant depended absolutely on this fact. The instruction given by the trial court, as above set out, is equivocal in its terms and of doubtful phraseology in placing the burden of establishing the premature birth of complainant's child.

As, for the reasons just given, this case must be reversed and a new trial granted, we think it proper to dispose of the question of the admissibility of the testimony of Miss Kealy, which was offered and refused by the trial court. The evidence shows that this witness was the only person in attendance upon the complainant at the time of her accouchement. Consequently, if her experience as a nurse in obstetrical cases has sufficiently qualified her to give an opinion as to the period of gestation and as to the development of the child at its birth, her testimony would be of great importance to the defendant, if she should answer according to the offer. There is no hard and fast rule governing the particular qualifications of an expert, which will entitle such witness to give opinion evidence on a particular state of facts. The question of competency generally rests in the sound discretion of the trial judge. Much, however, depends upon the nature of the case in regard to which the opinion is asked. The rule is stated, perhaps as succinctly as possible, in Lawson, Expert and Opinion Evidence (1st ed.), 210, where it is said: "An expert may be qualified by study without practice, or by practice without study. but mere observation without either is insufficient." In Gillett, Indirect and Collateral Evidence, sec. 209, it is said, "The law does not fix any precise degree of knowledge which a witness must possess to give expert evidence, but, if he would so testify, he must have such a familiarity with the subject as qualifies him to express an

opinion." The logical conclusion drawn from these statements of the rule is that one offering an opinion as an expert on any particular fact must show a knowledge of the fact, gained either from practice or study, or both, which is beyond common information or mere observation. When such information is shown, the better practice is to admit the evidence, leaving its weight to be determined by the triers of the fact. Upon the foundation laid for the admission of the testimony of Miss Kealy, we think she shows herself clearly possessed of information in obstetrical cases, gleaned from a long practice as a nurse in attendance upon such cases, as well as from some reading of books written for the instruction of professional nurses, and that such information qualifies her to testify as to the probable period of gestation and as to whether or not, in her opinion, the child was a fully developed nine-months' child at the time of its birth. We think the weight of authority sustains this view. *Allen's Appeal,* 99 Pa. St. 196; *Evans v. People,* 12 Mich. 27; *Lund v. Masonic Life Ass'n,* 81 Hun (N. Y.), 287, 30 N. Y. Supp. 775; *Fairchild v. Bascomb,* 35 Vt. 398; *Pearson v. Zehr,* 138 Ill. 48.

For the reasons given, we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

AMES, C., concurs.

EPPERSON, C., not sitting.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.