No. 41,006

In the Matter of the Estate of Sydney E. Walton and Helen M. Walton, Deceased. (H. W. HALL, Executor, MADELON WALTON and BRUCE WALTON, Minors by ALEX WALTON, Their Father, Natural Guardian and Testamentary Guardian, JOAN MILLER HARPER and MAXINE MILLER GILMORE, *Appellants,* v. KIM IVAN MILLER, a Minor, by N. C. MILLER, his Next Friend and Natural Guardian, *Appellee.*)

(326 P. 2d 264)

Opinion filed June 7, 1958.

L. E. *Quinlan,* of Lyons, and *Harold E. Jones,* of Dighton, argued the cause and were on the briefs for the appellants.

*Logan N. Green,* of Garden City, argued the cause, and *Ray H. Calihan, Daniel R. Hopkins,* and *Ray H. Calihan, Jr.,* all of Garden City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This appeal requires construction of two wills, a determination of the devisees and legatees under the terms of such instruments, and a review of rulings made by the district court.

The facts necessary to a proper understanding of the appeal and a determination of the issues therein involved are not in dispute and will be related as briefly as the state of the record permits.

On October 25, 1950, Sydney E. Walton and Helen M. Walton, husband and wife, executed identical wills, wherein each left all property, both real and personal, to the survivor with a residuary clause which, so far as here pertinent, reads:

"Third [*b*] All the rest, residue and remainder I devise and bequeath to nieces and nephews of myself and my wife, Helen M. Walton, who are the natural sons and daughters of Marjorie Miller, Alex Walton and N. C. Miller, share and share alike."

At the time of the making of such wills Sydney had two brothers and two sisters, namely, Alex Walton; Max Walton; Christine Tennyson and Marjorie Miller. Helen had three brothers, namely, Warren Miller; Frank Miller and N. C. Miller. All were of middle age. No provision was made in the wills for the brothers and sisters and it is to be noted the residuary clause, above quoted, bequeathed and devised all the rest, residue and remainder of the estate of the respective testators to the natural children of only two brothers and one sister. Of these Alex Walton had two natural children (Madelon and Bruce); N. C. Miller had three (Terry, Juleen and Joandel); and Marjorie Miller had two (Maxine and Joan).

By subsequently executed identical codicils certain real estate was devised to Joyce Gill, the niece and adopted child of the makers of the wills. In addition those codicils provided that Joyce was to share equally in the residue of the testators' estates with the other nieces and nephews, described in the residuary clauses of the wills.

Sydney and Helen died simultaneously in an airplane accident which occurred on January 31, 1956. On that date they were residents of Lane County, Kansas. Thereafter, and on March 15, 1956,

the probate court of that county admitted their respective wills to probate in one proceeding and pursuant to provisions of such instruments appointed H. W. Hall as executor.

Kim Ivan Miller, the natural son of N. C. Miller, one of the brothers named in the residuary clauses of the wills in question, was born on October 27, 1956, two hundred seventy days after the date on which the testators met accidental death.

On February 15, 1957, the executor filed a petition in probate court for final settlement. Pertinent portions of that pleading read:

"Petitioner further shows that under the terms of Paragraph 3 of each will, that the residuary estate is devised to the nieces and nephew of the decedents who are the natural sons and daughters of Marjorie Miller, Alex Walton and N. C. Miller, share and share alike, all as more fully set out in said will and that the court should construe the terms of said will to determine who are or were the natural sons and daughters of Marjorie Miller, Alex Walton and N. C. Miller, so that the proceeds and assets of said estate can be distributed and an orderly closing of the estate be effected."

.    .    .    .    .    .    .    .    .    .    .

"Wherefore, petitioner prays . . .; that the court determine the heirs, devisees and legatees entitled to the estate and assign the same according to the will of the decedents and that the court construe the terms of Paragraph 3 of said wills as above prayed for;"

Thereafter, and on March 9, 1957, Kim, by his next friend and natural guardian N. C. Miller, filed his written defenses in such petition wherein he set up his claim as one of the class named in the residuary clauses of the wills and asked that he be decreed to be a devisee and legatee of the decedents under the terms of such wills and that he have set aside and assigned to him his proper share of the residue of the deceased testators' estates.

Thereupon the executor and other devisees and legatees entitled to share in the estates filed written defenses to Kim's pleading.

On April 13, 1957, the issues raised by the pleadings just mentioned proceeded to trial in the probate court of Lane County where, after the introduction of evidence and arguments of counsel, a judgment and decree was rendered, which held in substance that Kim was not a devisee or legatee of the decedents or entitled to any interest in their estates under the terms and provisions of their wills.

Kim perfected an appeal from the foregoing judgment to the district court of Lane County. Thereafter a trial on the issues raised by the pleadings in probate court at which evidence consisting of an

exemplified copy of Kim's birth certificate and all matters of record in probate court was adduced judgment was rendered decreeing Kim to be a member of the class of nephews and nieces described in the residuary clauses of the wills and assigning him his proportionate share of the residue of the decedents' estates. In addition such court held that the estates could not have been safely closed unless the status of Kim under the terms of the wills had been first established; that the services of his attorneys had been to the benefit of the estates; that it would be inequitable to require such infant to bear all of the costs of the same; and that an attorney fee, which we pause here to note—if otherwise proper—was entirely reasonable considering the size of the estates and the services rendered, should be taxed as a part of the costs of the action.

Upon rendition of the foregoing judgment the executor and some of the devisees and legatees entitled to share in the estates, namely, the natural children of Alex Walton and Marjorie Miller, perfected the instant appeal where, under proper specifications of error, they raise four questions as grounds for reversal of the judgment. These questions will be stated and disposed of in the form and order in which they are presented and argued in the briefs.

1. Since appellee's claim was not filed in the probate court within nine months from the date of the first publication of the notice of the appointment of the executor, is it therefore barred by the nonclaim statute (G. S. 1949, 59-2239) of the probate code?

The fundamental weakness of appellants' position with respect to this question is that it assumes Kim's assertion of rights as a legatee and devisee under the terms of the wills is to be regarded as a claim against the estates. The same question has been raised and all arguments advanced by appellants with respect thereto decided by former decisions which require that it be answered in the negative.

See *In re Estate of Welch*, 167 Kan. 97, 104, 204 P. 2d 714, which holds:

"A marriage contract, assuming it cuts off all rights of an heir, the decedent's widow, to inheritance, to a widow's allowance and to homestead rights, and assuming it grants the entire estate to another heir, the decedent's daughter, takes nothing out of the estate which would otherwise be distributed to the other heir, the widow. It only determines which one of the heirs shall receive the assets of the estate and does not constitute a claim or demand against decedent's estate which must be asserted by the daughter within the period of the nonclaim statute." (Syl. ¶ 1.)

And what is said and held at page 104 of the opinion and page 105 of the concurring opinion in that case with respect to what constitutes a demand against an estate within the meaning of that term as used in the nonclaim statute of the probate code.

See, also, *In re Estate of Weidman*, 181 Kan. 718, 314 P. 2d 327, where it is said and held:

"The gist of all claims advanced on the point now under consideration is that the rights of Julia under her written defense are those of a person contesting a will or making a claim or demand against an estate hence, since she did not appeal from the order admitting the will to probate or file a claim against the estate within the time prescribed by G. S. 1949, 59-2239, the distict court's judgment should be set aside and the case dismissed. The difficulty from appellants' standpoint is that the record does not sustain their position respecting the nature of the involved controversy. Under the undisputed facts Julia is relying on the will, not contesting it, and her claims with respect thereto are in no sense to be regarded as a claim or demand against the estate, within the meaning of that term as used in 59-2239, *supra*. Indeed the real issues, in fact the only controverted issues, involved in probate court in connection with the final settlement of the estate were the construction to be given the will and the determination of persons entitled to share in the estate under its terms and provisions. Under our decisions appellants' claim the district court had no jurisdiction to hear and dispose of the appeal from the decision made by the probate court with respect to such issues on final settlement of the estate lacks merit and must be denied. See *Bindley v. Mitchell*, 170 Kan. 653, 228 P. 2d 689, where it is held:

" 'At the final settlement of the estate of a testate decedent the probate court has not only the authority but the duty of interpreting or construing the will and determining the respective beneficiaries of the estate named in the will and assigning to each the share of the property bequeathed or devised by the will.

" 'The method provided by statute for correcting any error the court might make interpreting or construing the will and determining the respective shares of the beneficiaries named therein is by an appeal from the order of final distribution. (Syl. ¶¶ 1, 2.)' "

2. Did the trial court err in allowing an attorney fee to the attorneys for the appellee which would be taxed as part of the costs of the action?

In fairness to counsel for appellants it should be stated that in raising this question they challenge the legality of the fee only, not the propriety of its amount. It may be stated that, without citing any authorities to support their position, the essence of all arguments advanced by appellants on this point is that no claim was made by appellee in probate court for the allowance of an attorney fee and no such claim was allowed by that tribunal, hence the district court had no power or authority to allow the fee in disposing

of the issues involved on appeal from probate court. We do not agree. All such arguments ignore the fact that under our statute (G. S. 1949, 59-2408) the appeal from the decision of the probate court was in district court for trial *de novo* as though that court would have had original jurisdiction on all matters therein involved; and that in their determination such court could exercise the·same jurisdiction and ·power as though the controversy had been there commenced. Indeed, in construing the force and effect of such section of the statute we have said (see *In re Estate of Hawk*, 171 Kan. 478, 483, 233 P. 2d 1061) that on appeal from orders involving final settlement the trial is to be *de novo* and the issues therein to be determined are not to be restricted by failure of the parties to appear, or by the evidence introduced, or the absence or insufficiency thereof, in the probate court. Moreover, with direct application to the allowance of attorney fees, we have held (see, *e. g.*, *Singer v. Taylor*, 91 Kan. 190, 137 Pac. 931) that where—as here—there is ambiguity in the provisions of a will and a real controversy as to its construction it is competent for the court to allow reasonable attorneys' fees out of the estate to the defeated as well as the successful party; and in connection with the same subject have held that under the provisions of what is now G. S. 1949, 60-3706, the district court, in its discretion, has authority to tax costs and allow attorney fees and to determine from what source they should be paid, as it may deem right and equitable. (*In re Estate of Reynolds*, 176 Kan. 254, 270 P. 2d 229; *Hurst v. Weaver*, 75 Kan. 758, 763, 90 Pac. 297.)

Based on what has been heretofore stated and the foregoing decisions we have no difficulty in concluding that under the facts and circumstances of this case the question last above posed must be answered in the negative.

3. Was it the intention of the testator(s) that a child born to N. C. Miller 270 days after their death should inherit under the provisions of their wills? It goes without saying this question requires a construction of the involved wills. The rule to be applied in such a situation under the existing facts and circumstances is well-established. See, *e. g.*, *In re Estate of Hauck*, 170 Kan. 116, 223 P. 2d 707, which holds:

"Where construction of a will is necessary the court must put itself in the situation of the testator when he made his will and from a consideration of the language used in the entire will determine as best it can the. intention he en-

deavored to convey, the cardinal rule being that the intention of the testator as gathered from the whole will must control unless contrary to settled rules of law." (Syl. ¶ 3.)

Mindful that when any ambiguity exists in its provisions every will must be construed by its own terms in accord with the rule last above stated, we see no necessity for prolonging this opinion by an extended statement of reasons responsible for the conclusion we have reached regarding the proper construction to be given the wills now under consideration. It suffices to say that when we place ourselves in the situation Sydney and Helen were in at the time they made their wills and then read those instruments in their entirety, in the light of the limited facts of record, we are impelled to conclude that under the residuary clauses of their wills they intended, except for Joyce their niece and adopted child, to give the residue of their estates to the nieces and nephews who were the natural sons and daughters of the sister and brothers specified in such residuary clauses; and further that they intended, particularly since they knew or should have known that under our decisions (see, e. g., In re Estate of Ellertson, 157 Kan. 492, 142 P. 2d 724; In re Estate of Works, 168 Kan. 539, 213 P. 2d 998) their wills became effective as of the date of their death, such gifts and devises should include all natural children of the persons therein named who, in contemplation of law, were in being on the date of the death of the surviving testator. To hold otherwise would result in attributing to them, which we refuse to do, an intention to discriminate between the living natural children of their favored sister and brothers on the date of the making of the wills and children of the same status born after the date of the making of those instruments. If, as appellants contend, the testators intended to limit their bounty to children living on the date of the making of the wills and exclude after born children they could have easily accomplished that result by specifically naming the then seven living children of Alex Walton, Marjorie Miller and N. C. Miller, instead the residue of their estates was devised and bequeathed to nieces and nephews, without naming them, who where the natural sons and daughters of such persons. Indeed, in our opinion, the very fact they failed to name the living children, considered in connection with their knowledge of the ages of the respective sister and brothers which must be assumed, is highly persuasive of the fact they contemplated such persons

might have additional children who would be entitled to share in the residue of their estates.

4. Thus we come to the final question. Was Kim Ivan Miller in being at the date of the death of the testators?

Appellants' position on this point is not strenuously argued and, we may add, unsupported by authorities. As we understand their argument, it is claimed there was no evidence to sustain appellee's position he was in being on the date of the death of the testators, which occurred on January 31, 1956. Let us see. The undisputed facts are that appellee was born 270 days after that date on October 27, 1956.

Courts take judicial notice of the normal period of gestation (20 Am. Jur., Evidence, 95 § 73; *Estate of McNamara*, 181 Cal. 82, 183 Pac. 522, 7 A. L. R. 313, 319). What that period is has been decided by the Supreme Court of our sister state of Nebraska on several occasions. See *Masters v. Marsh*, 19 Neb. 458, 27 N. W. 438, where the following statement appears:

"The period of gestation may be safely stated as a general proposition at from two hundred and fifty-two to two hundred and eighty-five days. Allowing the greatest latitude of enquiry I think it should be confined to a period of time between the lowest number of days above stated and that of three hundred days before the birth of the child. . . ." (p. 461.)

For later decisions where the same statement is quoted and applied see *Sang v. Beers*, 20 Neb. 365, 373, 30 N. W. 258; and *Souchek v. Karr*, 78 Neb. 488, 492, 111 N. W. 150.

For those who are interested in further information on the same subject see the following well-recognized medical—legal texts and treatises where, although there is some difference of opinion, it appears the Nebraska court's conclusion respecting the normal period of gestation is not out of line with such authorities. Glaister, Medical Jurisprudence and Toxicology, (9th Ed.) 377, 378; Schatkin, Disputed Paternity Proceedings, (3rd Ed.) 519-523 Incl.; 2 Taylor's, Principles and Practice of Medical Jurisprudence, Period of Gestation (10th Ed.) 32; Gradwohl, Legal Medicine, 806; Greenhill on Obstetrics (11th Ed.) 100. See, also, 32 Words and Phrases (Perm. Ed.), Period of Gestation, 87.

From the foregoing authorities it becomes clear the time elapsing between the date on which the testators died and the date on which Kim was born was within the normal period of gestation. It re-

mains to be seen whether the trial court properly concluded he was in being as of the date of the testators' simultaneous deaths. We think it did. See, e. g., *In re Seabolt*, 113 Fed. 766, which reads:

". . . 'A child in ventre sa mere is a child while yet unborn. From the time of conception the infant is in esse for the purpose of taking any estate which is for his interest, whether by descent, devise, or under the statute of distributions.' 10 Am. & Eng. Enc. Law (1st Ed.) p. 624. The early English doctrine that an unborn child is not to be regarded as in esse has been long ago exploded, and the decisions of the courts now are uniformly to the effect that children in ventre sa mere are included within the meaning of the word 'children.' This principle is so well established and so fully understood by the profession that it is not deemed necessary to cite authorities to support it. . . ." (p. 771.)

See, also, 41 Am. Jur., Perpetuities and Restraints on Alienation, 62 § 16, where it is said:

"In the operation of the rule against perpetuities, it is a well-established principle that a child en ventre sa mere at the time of the testator's death, who is subsequently born alive, is to be treated as having been alive at the testator's death and is a life in being for purposes of the rule. This is on the theory that the period of gestation is necessarily covered by the words 'within a life or lives in being.' . . ."

Having disposed of all questions raised by appellants and finding nothing in them or in arguments advanced in their support constituting reversible error the judgment of the trial court must be and it is hereby affirmed.

It is so ordered.