NEWTON TALBOT, executor, *vs.* MARIA L. FIELD & another, executors, & others.

Suffolk.   January 28, 1898. — April 4, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Will — Residuary Clause — Execution of Power of Appointment.*

In this case, which was that of a power of appointment given by will to dispose of property by will, the power being coupled by the testator with an expression of trust or confidence, and the property being already limited by the testator to charitable purposes which would dispose of it in accordance with his own bequests, so far as the power should not be exercised, there was enough to show that it was not the intention of the testatrix, who was the donee of the power and the wife of the testator, that the residuary clause of her will should operate as an execution of the power, except as to two pecuniary legacies and certain articles of personal property.

BILL IN EQUITY, by the executor of the will of Alonzo Ames Miner, who died on June 14, 1895, to obtain instructions as to its construction, and as to the construction of the will of Maria S. P. Miner, his widow, who died on July 27, 1895.  The husband's will was made on September 20, 1892, and allowed on August 15, 1895.  The will of the widow was made on June 20, 1895, and allowed on May 28, 1896.

Hearing before *Allen,* J., who reserved the case for the consideration of the full court, in substance as follows.

The will of Dr. Miner nominated the plaintiff and Mrs. Miner as executors and trustees.  Mrs. Miner died very shortly after the death of her husband, and the plaintiff is the sole executor of the will of Dr. Miner.  During his lifetime Dr. Miner had given to Tufts College an obligation, or bond, for the payment to the college of the sum of $40,000, upon the death of Mrs. Miner, and this bond was outstanding at his death.  His will directed that his other debts and his funeral expenses should be paid as soon as convenient after his death, and that a burial lot should be purchased and fitted, a monument erected, and the proprietors of the cemetery be paid for keeping the lot and monument in perpetual repair, unless the testator should have made

these provisions in his lifetime. The will then gave legacies of $2,000 to each of the testator's three sisters who should survive him, and $500 each to Maria L. Field, the testator's niece, and to four other persons. The next clause is in these words : " Fifth, I give to my beloved wife, Maria S. P. Miner, the custody and care of all the household furniture, plate, pictures, fuel, provisions, books, watches, jewelry, ornaments, wearing apparel, and household articles of every description, which shall belong to me at my decease, confiding to her good judgment ultimately to dispose of them, by will or otherwise, giving such memorials to personal friends and namesakes, both hers and mine, as she may think best. Whatever of these articles my said wife shall not have disposed of during her lifetime, by will or otherwise, shall at her decease remain a part of my estate."

The sixth clause gave all the rest and residue of the testator's property to the plaintiff and to the testator's wife, and to the survivor of them, in trust for the purposes following, viz. :

" 1. To keep all such property and estate prudently invested, and take the income thereof, and from said income, or property and estate if at any time the income shall be insufficient, pay all taxes, premiums of insurance against loss or damage by fire, and all expenses of repairs on my real estate, and other taxes on and expenses incident to the care, management, and preservation of said trust property and estate.

" 2. To pay the balance of said income to my beloved wife, the said Maria S. P. Miner, who may occupy or otherwise avail herself of the income of our family residence. And since I must leave in her care and protection several persons who might have a right to look to me, were I still living, for aid in their possible necessities, I authorize my said wife to make such drafts from time to time upon the estate itself, over and above the income, for her own comfort and support, or for the comfort and support of others, as she may determine to be necessary. I give and devise to her this authority without any limitation whatever, not impairing the before named obligation to Tufts College. And since her wishes and mine entirely concur, and since circumstances may arise that cannot now be foreseen, I empower her to devise and bequeath by will any and all of said estate, real and personal and mixed, held by said trustees, not impairing the

obligation above named to Tufts College, as in her judgment the interests we have at heart shall require.  In whatever she may do in these respects her action shall be final ; and her co-trustee shall be held in no wise responsible."

The next clause provided for the management, sale, conveyance, and reinvestment of the trust property.  The eighth clause directed the testator's surviving trustee, upon the death of the testator's wife, to pay legacies of two thousand dollars each to seven religious or educational or charitable institutions " provided they [these bequests] shall not have been annulled or modified by any action of my wife during her life, or by any will left by her as authorized by article sixth, paragraph second (2)." The ninth clause is as follows : " All the rest and residue of my property and estate of every description, real, personal, and mixed, not hereinbefore disposed of, nor disposed of by my wife, I give and bequeath to Tufts College, to be safely invested and kept as a separate fund, the income, and the income only, to be applied to the general purposes of the college."

The will of Mrs. Miner, after appointing her niece, Maria L. Field, and the defendant, Alonzo B. Parker, executors, has the two articles which follow :

" Second. I give and bequeath to my sister, Louisa Sarah Swasey, the sum of one thousand dollars; and to my niece, Maria Louise Field, the sum of four thousand dollars ; both of these legacies to be paid out of the residue of the estate of my late husband, Alonzo Ames Miner, D. D., over which, by the terms of his will, I have a power of appointment, which power I hereby exercise.

" Third. All the rest, residue, and remainder of my estate, real and personal, together with the horse, carriages, harnesses, and carriage furnishings, and the household furniture and personal effects, and the library left by my said husband, exercising hereby the power of appointment vested in me, I give, devise, and bequeath to my niece, Maria Louise Field.  This bequest is made in perfect confidence that my said niece will make disposal of a portion of the property so coming to her as she knows to be in accordance with my wishes ; but I do not intend that she shall be charged with any trust in regard to the property, nor required to account to the Probate Court for her disposal thereof."

The plaintiff finds that, after the payment of all debts and charges of administration, and the payment of the legacies given by the second, third, fourth, and fifth articles of Dr. Miner's will, the residue remaining, and consisting of both real and personal property, amounts in value to the sum of $40,000. The executors of the will of Mrs. Miner contend that this residue should be paid to them, to be disposed of under the second and third clauses of her will. The legatees, under the eighth and ninth clauses of the will of Dr. Miner, contend that none of this residue was disposed of by the will of Mrs. Miner, excepting an amount sufficient to pay the two legacies given in the second clause of her will, and the horse, carriages, harnesses, and carriage furnishings, and the household furniture and personal effects and library left by Dr. Miner, mentioned in the third clause of Mrs. Miner's will; and they claim that, with these exceptions, the residue should be applied by the plaintiff to the payment of the legacies given in the eighth and ninth clauses of Dr. Miner's will.

The answer of the executors of the will of Mrs. Miner alleges that Maria L. Field, the residuary legatee under the will of Mrs. Miner, had resided continuously in the household of Dr. and Mrs. Miner, as a member of their family, for the twenty-eight years next preceding their decease; and that Mrs. Miner had no property of any substantial value on which a will could operate at the time her will was made other than that referred to in the fifth and sixth articles of Dr. Miner's will.

The legatees under the eighth and ninth clauses of Dr. Miner's will allege in their answer that Mrs. Miner was much prostrated by the sickness and death of her husband, and executed her will six days after his death, while still confined to her bed with sickness; that Dr. Miner and Mrs. Miner had no children; that they lived together as husband and wife for more than fifty years, and were greatly attached to each other; that they were both members of the Universalist Church, and interested in its charities and enterprises, and during their married life had co-operated together in reference thereto; and that all of the legacies given in the eighth and ninth clauses of Dr. Miner's will were to churches, schools, or enterprises founded and conducted under the auspices of the Universalist denomination.

The questions of law arising in the cause were reserved on November 16, 1897, for the determination of the full court, the parties having agreed that the allegations of fact, so far as material, contained in the bill and answers, are to be taken as true.

The case was first argued on January 28, 1898, before Field, C. J., Allen, Lathrop, and Barker, JJ.; and, not having been decided before the retirement of Mr. Justice Allen, was afterward submitted on briefs to Holmes, Knowlton, and Morton, JJ., · Mr. Justice Hammond declining to sit because of interest.

*A. Hemenway*, (*W. O. Kyle* with him,) for the executors of the will of Mrs. Miner.

*H. M. Knowlton*, (*A. E. Denison & T. H. Armstrong* with him,) for Tufts College and other legatees.

BARKER, J. The question for decision is the extent to which Mrs. Miner has exercised upon the estate of her late husband the powers of disposition by will conferred upon her in the fifth and sixth clauses of his will.

As was said by Mr. Justice Charles Allen in *Cumston* v. *Bartlett*, 149 Mass. 243, 248, " The general rule is now well established in this Commonwealth, that a general residuary devise will operate as an execution of a power to dispose of property by will, unless there is something to show that such was not the testator's intention. *Amory* v. *Meredith*, 7 Allen, 397. *Willard* v. *Ware*, 10 Allen, 26². *Bangs* v. *Smith*, 98 Mass. 270. *Sewall* v. *Wilmer*, 132 Mass. 131." See also *Hassam* v. *Hazen*, 156 Mass. 93.

The power given to Mrs. Miner in the fifth clause covers " all the household furniture, plate, pictures, fuel, provisions, books, watches; jewelry, ornaments, wearing apparel, and household articles of every description " which belonged to Dr. Miner at his death, and is accompanied with a gift of the care and custody of all these articles, and is a power to dispose of them " ultimately," by will or otherwise, and is coupled with an expression of the testator's confidence that she would exercise it by giving such memorials to personal friends and namesakes, both her own and those of the testator, as she might think best. The power given in the sixth clause covers the residue of the estate devised and bequeathed to the trustees after the payment of the debts, except the bond to Tufts College, the funeral expenses, the

expense of procuring and putting in order a burial lot and pro-
viding for the perpetual care of the same, the procuring of a
monument, the pecuniary legacies of some $8,500 given by the
third and fourth clauses, and not including the articles dealt with
in the fifth clause, except as they might remain a part of the
testator's estate at the death of his wife.  This residue the will
contemplated would be held by the trustees, of whom the wife
was one, until her death, save as she should from time to time
make drafts upon it over and above the income, for her own
comfort and support or for the comfort and support of others, as
she might determine to be necessary, the only limitation of this
power to draw upon the principal being that such drafts must
not impair the sufficiency of the fund to discharge the bond to
Tufts College payable at the wife's death.  In giving his wife
the further power of disposal by her will, the testator states that
since her wishes and his own entirely concur, and that since
circumstances may arise that could not be then foreseen, he
empowers her to devise and bequeath by her will any and all
of the trust estate, not impairing the obligation mentioned, " as
in her judgment the interests we have at heart shall require."
These provisions were made less than three years before the
testator's death, and it is not suggested that between the date of
the will and the time of the testator's death, or in the interval of
six days between his death and the making of his wife's will,
any unforeseen circumstances had arisen.  Nor is it suggested
that the testator was wrong in supposing that the wishes of his
wife and his own entirely concurred.

While Mrs. Miner is given power to dispose by her will of the
whole fund and property concerning which the  plaintiff  now
asks for instructions, it is plain that she could not, without
violating the faith reposed in her by the husband with whom
she had lived for more than fifty years, change the disposition
which he had given to the fund, save as in her judgment the
interests which both had at heart should require.  Among those
interests were the benefit of the educational, religious, or chari-
table institutions with which Dr. Miner had been connected,
and which he made his legatees by the provisions of the eighth
and ninth articles of his will; and the bequests in his will for
the benefit of those interests, unless his wife should order other-

wise, were so large as to call for the application of the whole fund.

The case thus differs from that of *Amory* v. *Meredith*, in which the rule of construction above mentioned was first adopted in this Commonwealth, and in which the power was one created by the testatrix whose will was held to have been an execution of the power, and in which the property over which the power was executed was property which had belonged to the testatrix absolutely, and had been by her for her own convenience placed in a trust of which she had the income, and which with the assent of the trustees she could terminate at her option, and by the terms of which, if she did not exercise her power, the trust property would go to her own heirs at law. In none of the cases in which the rule of *Amory* v. *Meredith* has been applied in our decisions was the power coupled by the donor with an expression of trust or confidence, and in none of them was the property over which the power was given already limited by the donor to benevolent or charitable purposes which would dispose of it in accordance with his own bequests, so far as the power should not be exercised. These considerations are entitled to some weight in determining how far Mrs. Miner intended to exercise by her will the powers conferred upon her, and the circumstances under which she made her own will are to be taken into account.

If, as the executors of Mrs. Miner's will contend, it was her intention to exercise her powers of disposition by will over all the property to which that power extended, the simple and natural way of carrying out that intention would have been to bequeath to her sister the sum of one thousand dollars, given in her first bequest, and then to devise and bequeath all the residue of her own property, and of that over which she had power, to Miss Field. Instead of this, she provides in one clause for the giving of one thousand dollars to her sister, and of four thousand dollars to Miss Field, both sums to be paid out of the residue of Dr. Miner's estate, and stating that she thereby exercises her power of appointment. She then by another clause gives to Miss Field two classes of property, separately designated and defined by these words, "All the rest, residue, and remainder of my estate, real and personal, together with the horse, car-

riages, harnesses, and carriage furnishings, and the household furniture and personal effects, and the library left by my said husband," the full sentence being this: "All the rest, residue, and remainder of my estate, real and personal, together with the horse, carriages, harnesses, and carriage furnishings, and the household furniture and personal effects, and the library left by my said husband, exercising hereby the power of appointment vested in me, I give, devise, and bequeath to my niece, Maria Louisa Field." A majority of the court are of opinion that the first portion of this sentence was intended by the testatrix to deal only with the property which, when the will was made, was her own, and which she could dispose of without being thereto empowered by the provisions of her husband's will; and that the second portion of the sentence, beginning with the words "together with," and enumerating a number of classes of articles of which she had no power to dispose, except under the authority given by her husband's will, is all to which the clause "exercising hereby the power of appointment vested in me" refers. It is urged that her own property was of no substantial value, and that she had no real estate of her own, while the language is, "all the rest and residue and remainder of my estate, real and personal." But every woman in the position in life of the testatrix has many belongings which, while of no substantial value, are her estate, and a natural construction of the whole phrase is that it means all of her own property of every kind. There is nothing in this clause of the will to indicate that the testatrix was here dealing with any considerable amount of property, or was making a disposition which would render nugatory the bequests which her husband had made to the numerous institutions with which he had been connected. The expressions of confidence that her niece will make a disposal of a portion of the property so coming to her as she knows to be in accordance with the wishes of the testatrix, and the statement that the niece shall not be charged with any trust in regard to the property nor required to account to the Probate Court for her disposal thereof, are entirely consistent with the theory that this clause of the will dealt only with Mrs. Miner's own personal belongings, and with certain classes of chattels which had been owned by her husband, and with the ultimate disposition of many of

which she had been charged by her husband in the fifth clause of his will, and neither the concluding sentence, nor the clause as a whole, seems to us to show that the testatrix intended by it to do more than to dispose of the property which she had independently of her husband's will, and of the chattels coming from him and included in the classes specifically designated.

In our opinion the natural construction of the whole clause is that the testatrix gives all of her own property, not needed for the payment of debts and charges of administration, to the niece to whom she had just given four thousand dollars out of Dr. Miner's estate, and that she gives her in addition, by way of appointment under the powers, the horse, carriages, harnesses, and carriage furnishings, and the household furniture and personal effects and library left by Dr. Miner, exercising to that extent only her power of appointment. The niece had a legacy of five hundred dollars from Dr. Miner, and this and the four thousand dollars given her in the preceding clause were to be hers absolutely. In our view, it is more likely that the expressions of confidence that the niece would make a disposal of a portion of the property coming to her under the third clause in accordance with the wishes of the testatrix were used with reference to what would go to the niece under our construction of the clause, than that they were intended to influence her with reference to the disposition of the large fund which would go to the niece under the other construction. That fund had been devised and bequeathed by Dr. Miner in accordance with wishes and purposes shared in by Mrs. Miner, and her own dispositions were to take effect when all further necessity of applying any portion of the fund to her own comfort or support, or to necessities caused by unforeseen circumstances were at an end, and when, unless she saw fit to provide otherwise, her husband's gifts were to take effect. If she had intended to create a new period of suspense, and to commit the interests which both she and her husband had at heart to the will or conscience of her niece, she would have used other and more explicit language, even if she had not stated in terms the circumstances which impelled her to a course which the circumstances show would have been strange and unnatural. On the other hand, if the gift was only of the

personal belongings of herself and of her late husband, the giving of them to the niece, in confidence that she would do with some part of them what she knew the testatrix to wish, was entirely natural, and was in furtherance of the purposes of her husband's will.   The other construction would require us to believe that, within a very few days after her husband's death, for no reason expressed by her, or indicated by the circumstances in which she acted, she intentionally defeated the charitable and benevolent purposes declared by his will.

A majority of the court is of opinion that there is enough to show that it was not the intention of Mrs. Miner to execute her powers of appointment further than to give to her sister a legacy of one thousand dollars, and to her niece a legacy of four thousand dollars and the chattels comprised in the classes of articles mentioned in the third clause of the will, and the petitioner should be instructed accordingly.                          *So ordered.*