No. 34,128

JULIA BAGGERLY PHILLIPSON, IDA PEARL JOHNSON, J. RUSSELL BAGGERLY and ROBERT HARRISON BAGGERLY, *Appellants*, v. JOHN WATSON, TYLER WATSON, W. H. BARBER, THE KANSAS WESLEYAN UNIVERSITY, ASBURY HOSPITAL, WOMEN'S FOREIGN MISSIONARY SOCIETY OF THE METHODIST CHURCH, ELIZABETH WEBSTER, JULIA WEBSTER, EMMA L. NIELSON, M. ANTOINETTE VALE, ROSALIND M. AMBROSE, EMMA N. COWLES, CHURCH HOME OF GENEVA, NEW YORK, CONFERENCE CLAIMANTS, PREACHERS' AID SOCIETY, JULIA M. PAYNE and CHARLES C. DAVIS, as Executor of the Estate of Clara Barber Baggerly, Deceased, *Appellees*.

(87 P. 2d 567)

Opinion filed March 4, 1939.

F. D. Boyce, of Minneapolis, C. W. Burch, B. I. Litowich, La Rue Royce, L. E. Clevenger, E. S. Hampton and R. E. Haggart, all of Salina, for the appellants.

L. A. McNalley, of Minneapolis, for appellee Chas. C. Davis, as executor of the estate of Clara Barber Baggerly, deceased, A. F. McCarty, Bryan J. Hoffman and Henry N. Eller, all of Salina, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action to construe the will of Peter Baggerly. Defendants, by cross petitions, sought to have construed with it the will of his wife, Clara Barber Baggerly, and to have certain claims allowed and paid from the assets of both estates. The trial court's decision was adverse to plaintiffs, and they have appealed.

The facts, not seriously controverted, may be stated as follows: Peter Baggerly and his wife were residents of Minneapolis, members of the Methodist Episcopal Church, and interested in its various religious and educational activities. They had no children. On October 12, 1920, they signed a pledge to the board of trustees of the Kansas Wesleyan University for the sum of $5,000, "payable on or before our death." On October 27, 1923, they signed a pledge to the Preachers' Aid Society for $1,500 to "become due upon the day of our decease" and payable within one year thereafter "out of the proceeds of our estate."

Peter Baggerly died November 19, 1925, leaving a will, the pertinent provisions of which read:

"After all my lawful debts are paid and discharged, I give, devise and bequeath to my wife, Clara Barber Baggerly, all of my property . . . excepting the following bequests" [of $1,000 each to the testator's six nephews and nieces, four of whom are plaintiffs in this action and the other two are defendants].

"It is further declared to be the intent of my will that the conveyance of a part of my estate to my wife, Clara Barber Baggerly, is absolute for her personal use and for such purposes as she may deem proper having in view the carrying forward of the interests with which I have been identified or have suggested for consideration.

"It is also to be understood that any residue of my estate after the settlement of the same at her death shall revert to my legal heirs."

His wife, Clara Barber Baggerly, was named to be executrix.

The will was duly admitted to probate April 19, 1926, and the widow, Clara Barber Baggerly, was appointed and qualified as

executrix. She filed an inventory and appraisement showing personal property of the value of $13,958.42, and real property consisting of three tracts of farm land, and a residence property in Minneapolis, of the total appraised value of $18,720.

The executrix administered upon the estate of Peter Baggerly and filed her final account November 1, 1927. This was approved by the court and an order was made discharging the executrix.

On June 10, 1930, Clara Barber Baggerly executed a pledge to the Preachers' Aid Society for $1,000 to "become due upon the day of my decease" and to be paid "out of the proceeds of my estate."

On December 4, 1937, Clara Barber Baggerly died, leaving a will, the pertinent portions of which read:

"I direct that all just debts be paid, to include funeral and burial expenses. . . . Also a pledge of five thousand dollars ($5,000) made by my husband and myself, October 20, 1920, to Kansas Wesleyan Univ. to be paid at the decease of both—⅓ from my individual estate, ⅔ from his. Ledger p—61.

"Also a pledge of fifteen hundred dollars ($1,500) made by us to the Conference Claimants, or Preachers' Aide, Oct. 27, 1923—⅓ fr. my estate and ⅔ from his. Ledger, p. 61. Also a pledge to Asbury Hospital, made by myself. . . .

"After debts, pledges, and subscriptions are paid, I direct that my husband, Peter Baggerly's estate be equally divided among the nieces and nephews, as follows (see his will) [naming and giving the addresses of six nieces and nephews of Peter Baggerly given $1,000 each by his will].

"From my own individual estate, I direct, will and devise, as follows: [Five hundred dollars to the Women's Foreign Missionary Society of the M. E. Church, $500 to the M. E. Church, the remainder to be divided in five portions and each portion given to one or more named persons.]" It appointed Chas. C. Davis as the executor.

This will was duly admitted to probate December 10, 1937, and Chas. C. Davis was appointed and qualified as executor.

Chas. C. Davis, as such executor, filed an inventory and appraisement in the estate of Clara Barber Baggerly, listing real and personal property of the aggregate appraised value of $11,486.08. Included in this list were three tracts of farm land of the appraised value of $8,000, the title to which stood in the name of Peter Baggerly, and being the same property inventoried as a part of the assets of his estate.

This action was brought in March, 1938. The plaintiffs are four of the six nieces and nephews of Peter Baggerly, mentioned in his will, and also in the will of Clara Barber Baggerly. The other two are named as defendants. Other defendants were the Kansas Wes-

leyan University, the Preachers' Aid Society, Chas. C. Davis, as executor of the estate of Clara Barber Baggerly, and all of the beneficiaries named in the will of Clara Barber Baggerly. It alleged the relationship of the plaintiffs and of the two defendants, nephews of Peter Baggerly; the death, testate, of Peter Baggerly and of Clara Barber Baggerly; that there remained undisposed of certain real estate of Peter Baggerly, describing the tracts of farm land which stood in his name and which have been inventoried in each of the estates; alleged that the plaintiffs and the two defendant nephews were the owners in fee of that property under the will of Peter Baggerly, and asked for the construction of his will in the following particulars:

"(a) Did Peter Baggerly by his will intend to give all his property to his wife, Clara Barber Baggerly, to be hers absolutely; or (b) Did Peter Baggerly by his will intend to give his wife, Clara Barber Baggerly, a life estate only in his property, with power to dispose of the same during her lifetime; or (c) Did he intend that his legal heirs should have all his property remaining undisposed of upon the death of his said wife, and (d) What did Peter Baggerly mean in his will by the expression, 'interest with which I have been identified or have suggested for consideration?'"

The Kansas Wesleyan University answered, alleging its corporate existence as a religious educational institution; admitted the death of Peter Baggerly and the probate of his will; alleged the death of Clara Barber Baggerly, testate, and the probate of her will and the appointment of her executor, and for lack of information neither admitted nor denied that the three pieces of farm property described in the petition were undisposed of property of the estate of Peter Baggerly; suggested an interpretation of the will of Peter Baggerly, and alleged that if the court determined that will should be construed it should also construe in connection therewith the will of Clara Barber Baggerly, and by cross petition against plaintiffs and all other defendants set up the $5,000 pledge of the date of October 12, 1920, made to it by Peter Baggerly and Clara Barber Baggerly; gave credit for certain payments thereon, and asked judgment against the assets of both estates for the amount due thereon, and asked for the construction of both wills. The Preachers' Aid Society filed a similar answer, setting up the pledge made to it October 27, 1923, by Peter Baggerly and Clara Barber Baggerly, and also the pledge made to it June 10, 1930, by Clara Barber Baggerly of $1,000, and by cross petition asked for judgment thereon, and that both wills be construed together. Chas. C. Davis, as executor of the

estate of Clara Barber Baggerly, filed a similar answer, and by cross petition asked the court to construe both wills; alleged that all the property inventoried in her estate was assets of her estate, and asked for instructions upon administering the estate.

Plaintiffs answered the cross petitions denying all allegations therein inconsistent with the allegations of plaintiffs' petition, and specifically pleading that the claims set up in the cross petitions are barred by the statute of nonclaim, for the reason that they had never been presented for allowance in the estate of Peter Baggerly, and asked that the will of Peter Baggerly be interpreted as prayed for in the petitions.

At the trial, over repeated objections of plaintiffs, the court admitted in evidence the $5,000 pledge of October 26, 1921, the $1,500 pledge dated October 27, 1923, and the payments made on these pledges, and also the $1,000 pledge of June 10, 1930, and entries on page 61 of a book (not a ledger) which Chas. C. Davis, executor of the estate of Clara Barber Baggerly, found among her papers and effects. These entries read:

"Estate pledged to the Kansas Wesleyan University given by myself and Clara Baggerly viz., 10-26-21, a note for $5,000 payable at the settlement of our estates. . . . 9-10-23, . . . two-thirds payable out of my estate and one-third out of her estate."

The further notation relates to rate of interest and payments made.

"October 27, 1923, estate pledged and conference claimant of the Northwest Kansas Conference" (another name for the Preachers' Aid) "by myself and Clara Baggerly payable out of our estates, after our decease.

"Note of $1,500 to bear interest at 2% per annum. Interest to accrue after May 1, 1924, $1,500.

"From her estate one-third and from mine two-thirds."

The first part of each of these entries was in the handwriting of Peter Baggerly and the latter part in the handwriting of Clara Barber Baggerly. The abstract does not make it clear just how much was written by each of them.

This evidence was received by the court for the purpose of aiding the court in construing the will of Peter Baggerly. There was also admitted in evidence the two wills, the inventories of each estate, and the final account in the estate of Peter Baggerly, and the order of the court approving it and discharging the executor.

The trial court found that each of the wills should be construed and its legal effect determined; that the issues should be broadened

beyond those raised in plaintiffs' petition, and that it was agreed between the parties that the records in the estate of Peter Baggerly show that it had been closed and the executrix discharged November 5, 1927.

It was adjudged and decreed that Peter Baggerly, by his will, devised and bequeathed to Clara Barber Baggerly, his wife, all his property, except the bequest of $1,000 each to his six nephews and nieces named in his will, for and during her lifetime, with full power to dispose of her estate and property bequeathed and devised to her, either by will or act *inter vivos,* and that the words of the will, "It is also to be understood that any residue of my estate after the settlement of the same at her death shall revert to my legal heirs," means that in case Clara Barber Baggerly failed to make disposition of any of the property devised and bequeathed to her, either by will or act *inter vivos,* then that portion of his estate not so disposed of by Clara Barber Baggerly should revert to and become a part of his estate.

That Clara Barber Baggerly, by her will, did provide for the payment of the obligation of herself and husband of the pledge to the Kansas Wesleyan University; that she attempted to provide that the pledge should be paid, two-thirds from the estate of Peter Baggerly and one-third from her estate, "but that effect cannot be given to such attempted division of payment, for the reason that such pledge notes were and are the joint and several obligations of the parties, and for the further reason that all of the property, real, personal and mixed, originally belonging to either or both said estate, is at this time held by her executor as assets of the estate of Clara Barber Baggerly, deceased." Further, that her will directed that all other just debts, subscriptions and expenses of administration should be paid, and if any of the property she had inherited from her husband were then left it should be divided among the nieces and nephews of Peter Baggerly named in her will, and if any of the property originally comprising her separate estate were then left there should be paid out of it the several bequests mentioned in her will, to be paid out of her "own individual estate"; and further, that Clara Barber Baggerly by her will disposed of all the property originally belonging to the estate of Peter Baggerly.

That none of the property originally comprising the estate of Peter Baggerly reverted to his estate, and that all of the property originally belonging to him, or originally belonging to Clara Barber Bag-

gerly, was held by her executor as assets of her estate, and that all of it is charged with the payment of the debts, expenses, pledges and subscriptions, and then with the pledge of $1,000 made individually by Clara Barber Baggerly to the Preachers' Aid Society.

The amount due on these several pledges was determined. It was adjudged and decreed that Chas. C. Davis, as executor of the estate of Clara Barber Baggerly, was authorized, empowered and instructed to administer that estate in accordance with the decree.

We turn now to the legal questions argued. The first of these is a contention on behalf of appellees that appellants are not entitled to be heard for the reason that the appeal was not taken in time, and for the further reason that there was no argument in support of the motion for a new trial. The action was tried and judgment rendered May 13, 1938. On May 16 the motion for a new trial was filed upon the grounds, among others, that the court admitted incompetent evidence and that the judgment rendered was contrary to the evidence. The motion was overruled May 25, 1938, the journal entry reciting the appearance of counsel for all of the parties, and that the motion was overruled "after hearing arguments of counsel and the court being fully advised in the premises." The notice of appeal was filed July 23, 1938. This was within two months after the motion for a new trial was overruled, but more than two months after judgment was rendered. Thereafter, and on December 23, on motion of appellees, the court made an order correcting the journal entry overruling the motion for a new trial by striking out the words "after hearing arguments of counsel," and reciting the fact to be that the "motion for a new trial was never presented to the court other than by the remark by counsel for plaintiffs that 'Will our motion for a new trial be overruled?'; that there was no argument either for or against said motion, . . . and no request for argument made." It will be observed this journal entry, as corrected, does not recite that the court did not give judicial consideration to the motion for a new trial, as was its duty. In a case such as this, where the appeal is not taken within time after the judgment, but is taken within time after the ruling on the motion for a new trial, questions raised on appeal may be limited to those raised and necessarily considered by the court in denying the motion for a new trial. Where the motion for a new trial is on the ground that the judgment rendered was contrary to the evidence, and that the court had admitted improper evidence, the appeal taken within time after the ruling upon the motion for a

new trial raises those questions, and they may be reviewed with whatever effect the review may have upon the questions of law involved in the judgment of the court. These propositions are well settled law in this state.

Appellants contend the court erred in admitting in evidence, over their objections and for the purpose of construing the will of Peter Baggerly, the entries, page 61, in the book referred to as the "ledger," the will of Clara Barber Baggerly, the inventory of her estate, the several pledges, and other documents hereinbefore mentioned. This point is well taken. In construing a will the principal thing to be considered is the will itself, that is, the language used by the testator in the will. Testimony pertaining to the situation of the testator when the will was made with respect to his family or relatives, his estate, and his financial interests, may be received. With respect to these points it appears to be agreed that Peter Baggerly and his wife had separate estates, which both recognized; that his estate was of the value of about $30,000, while hers was substantially less; that while they lived in town he was interested in farming and made some financial investments in stocks, notes and mortgages; that he and his wife were interested in the church and in its benevolent and educational activities and contributed substantially to those causes, and they had signed two pledges, payable at their death; that they had no children; that he had six living nephews and nieces. This was the general situation when he made his will. This contemplated that his lawful debts be paid, and provided that $1,000 should be paid to each of his six nephews and nieces, and by it he gave all the remainder of his property to his wife "for her personal use and for such purposes as she may deem proper having in view the carrying forward of the interests with which I have been identified or have suggested for consideration," and after the death of his wife the residue was to go to his legal heirs, namely, his six nephews and nieces.

It seems obvious that Peter Baggerly did not anticipate his wife would use all his property. He gave the property to her "for her personal use and for such purposes as she may deem proper having in view . . . ," etc. These are limitations upon use. The will gave her a life estate in the property, with power of disposal for the uses mentioned. (*Greenwalt v. Keller*, 75 Kan. 578, 90 Pac. 233.) Had all the property been consumed in such uses there would have been no residue, but the language of the will makes it clear the

testator thought there would be a residue, and he disposed of that residue by his will. He did not leave the disposition of that residue to his wife. The testator gave the wife no authority to dispose of his property, after her death; indeed, it negatives that power, since he, by his will, made that disposition.

These views are in harmony with well-settled principles of law pertaining to the construction of wills. It is well settled in this state, and generally elsewhere, that the primary rule for the construction of wills is "that the testator's intention is to be gleaned 'from the four corners of the instrument'—from the entire text of the document." (*Markham v. Waterman,* 105 Kan. 93, 96, 181 Pac. 621, and cases there cited; Thompson on Construction of Wills, §§ 41, 46, 47.) The will of Peter Baggerly gave to his wife only the implied power to dispose of his property for the uses mentioned in his will. A late authority, Thompson on Wills, 2d ed. (1936), § 400, states the general rule, which we deem applicable here, as follows:

"Where a life estate is given one, coupled with a power to sell, the life tenant is not given a power of disposition by will, especially where the power of sale is given for the support and maintenance of the life tenant. A life tenant to whom a power of sale is given for necessary support is not authorized to make a testamentary disposition of the property, but is limited to a transfer *inter vivos.*"

To the same effect are: *Mansfield v. Crane,* 116 Kan. 2, 5, 228 Pac. 123; *Smith v. Judge,* 133 Kan. 112, 298 Pac. 651; *Ford v. Ticknor,* 169 Mass. 276, 47 N. E. 877; *Wooster v. Fitzgerald,* 61 N. J. L. 368, 39 Atl. 679; *Maynard v. Raines,* 240 Ky. 614, 42 S. W. 2d 873.

The will before us is clearly distinguishable from that considered in *Sinke v. Muncie,* 110 Kan. 345, 203 Pac. 1102, where the testator devised all his property to his wife for life, "and at her death to dispose of all the remainder of the property among the children and their heirs, as she may deem best." It was there held the wife's disposition of the property among the children and their heirs might be made by deed or will.

No doubt the trial court would have so construed the will had it not been for the influence on the court, from the evidence of matters which occurred long after the will of Peter Baggerly was written, after it was probated, and after his estate had been administered upon and his executors discharged. Over the repeated objections of appellants this evidence was admitted for the purpose of aiding the court in construing the will of Peter Baggerly. We are clearly

of the opinion the evidence was incompetent for that purpose, and that it was error for the court to receive it.

One of the items of evidence received was the entry in the book spoken of as a ledger, page 61. This had not been referred to in the will of Peter Baggerly. The general rule is:

"Instruments not properly referred to in the will form no part thereof, but when referred to in the will, they may be competent evidence to explain the will." (Thompson, Construction of Wills, § 102.)

Although it was error to admit this record for the purpose of construing the will of Peter Baggerly, perhaps what he had written of the entry in the ledger, being nothing more than that he and his wife had made certain pledges, conveyed no more information than the pledges themselves. These pledges might be shown as evidence of financial obligations, but we see no reason to admit them in evidence for the purpose of construing the will.

Our limited time for research has disclosed but one case in which the will of the wife was construed with the will of her husband, who died some years earlier. (*Talbot v. Field*, 173 Mass. 188, 53 N. E. 403.) But there the will of the husband gave to the wife the use of property, with power to dispose of it ultimately "by will or otherwise." There is no provision of that kind in the will of Peter Baggerly, and as previously pointed out, he did not give his wife power to dispose of the residue of his property, but did that himself.

Extrinsic evidence, competent to be received for the purpose of construing a will, all relates to the time of its execution, or prior thereto. (69 C. J. 51, 66, 139.) We have been unable to find any authority, and counsel have cited us to none, holding that matters which transpire long after the execution of the will, and after the death of the testator and the settlement of his estate, could be used in construing his will.

Appellants object to the introduction of the pledges to the Kansas Wesleyan University and to the Preachers' Aid Society, which had been executed by Peter Baggerly and his wife, on the grounds that they were not competent evidence on the construction of the will, and that any recovery upon them, as against the estate of Peter Baggerly, had been barred by the statute of nonclaim. These objections were well taken. They were no more competent in the construction of the will than any note or other evidence of debt executed by Peter Baggerly would have been. These evidences of financial obligation never had been presented for allowance to the

estate of Peter Baggerly. The administration of that estate had been closed and the executor discharged in 1927. The cross petitions of the payees of these pledges, treated as an action to have their claims established against the estate of Peter Baggerly, were too late. (G. S. 1935, 22-702 [since amended]; *Loveland v. Hemphill*, 122 Kan. 577, 253 Pac. 606; *Bristow v. First Trust Co.*, 140 Kan. 711, 38 P. 2d 108.)

Appellees argue that the pledges were not due until the death of Clara Barber Baggerly. Conceding for the purpose of the argument, but not deciding, that the pledges were not due as to Peter Baggerly at his death, our statute provides for the proving and allowing of such claims against the estate. (G. S. 1935, 22-729 [since amended]; *Jewell v. MacFarland*, 141 Kan. 40, 40 P. 2d 330; 142 Kan. 469, 50 P. 2d 939.)

When one dies his personal ability to pay his obligations ceases. His creditors, if they are paid, must be paid from his estate. There is certainly no reason why the claims should not have been presented against his estate. Appellees' objection to their introduction in evidence should have been sustained.

Appellees point out that the will of Peter Baggerly disposed of his property "after all my lawful debts are paid," and treat that as a declaration in his will for the payment of his debts. It has been repeatedly held that a general provision in a will for the payment of all the testator's lawful debts has no force to avoid the statute of nonclaim. In *Collamore v. Wilder*, 19 Kan. 67, it was held:

"The formal and general language in a will, requiring that all the just debts of a deceased should be paid by his executors out of his estate, cannot be successfully invoked in behalf of a person who, having a just claim against such testator, neglects the legal proof of his demand until more than three years have elapsed after the issuance of letters testamentary, and until after the estate has been finally settled according to the provisions of law, and the administration closed." (Syl. ¶ 5.) (And see annotations on this point, 65 A. L. R. 862.)

Because of the improper admission of evidence for the purpose of construing the will of Peter Baggerly the court erroneously construed the two wills together and held that the will of Clara Barber Baggerly disposed of all the property remaining at the time of her death which belonged to the separate estate of Peter Baggerly, as well as the property which belonged to her separate estate. Since Clara Barber Baggerly had no power to dispose of that portion of

the separate estate of Peter Baggerly which she had not used, her will had no effect upon that property.

We have considered all the argument of counsel and examined the authorities cited, but deem it unnecessary to extend this opinion.

It necessarily follows from what we have said that the judgment of the court overruling the motion for a new trial must be reversed, with directions to grant a new trial to be conducted in harmony with the views herein expressed. It is so ordered.

ALLEN, J., dissenting.