No. 41,402

In Re Estate of Carey Sowder, Deceased. (ROBERT R. SOWDER, *Appellant*, v. RICHARD D. SOWDER, GEORGE A. SOWDER and A. C. BEAN, individually and as executor of the estate of Carey Sowder, *Appellees.*)

(340 P. 2d 907)

Opinion filed June 13, 1959.

George Forbes, of Eureka, argued the cause, and *Thos. C. Forbes* and *Harold G. Forbes*, both of Eureka, were with him on the brief for the appellant.

*John F. Eberhardt*, of Wichita, argued the cause, and *George B. Powers, Carl T. Smith* and *Gerald Sawatzky*, all of Wichita, were with him on the brief for the appellee, Richard D. Sowder.

*Elvin D. Perkins*, of Emporia, was on the brief for the appellee, George A. Sowder.

The opinion of the court was delivered by

SCHROEDER, J.: This appeal involves the construction of a will of a resident decedent, in which the order of final settlement of the estate in the probate court was appealed to the district court.

The principal question presented is whether a residuary gift to one of the decedent's children, who predeceased the testator without issue, passed to the surviving residuary beneficiaries, since the will contained no language whatever regarding this contingency, or whether such gift passed in accordance with the laws of intestate succession.

The facts in this case are rather simple and are not in dispute. Carey Sowder was a resident of Greenwood County, Kansas, during his lifetime and wrote and executed the will in question on September 19, 1950. On that date he was a widower and all four of his children were living. They were: Richard D. Sowder, Gertrude Ione Sowder, George A. Sowder and J. Robert Sowder. Omitting formal parts and the paragraph appointing the executors, the will of Carey Sowder reads:

"I, Carey Sowder of Madison, in the County of Greenwood, in the State of Kansas, being of good health and sound and disposing mind and memory, do make and publish this, my Last Will and Testament, hereby revoking all former wills by me made; and as to my worldly estate and all the property, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the manner following, to-wit:

"First. It is my will that all my just debts and funeral expenses shall be paid by my executor at the earliest possible date.

"Second. I give and bequeath to my grandson, Robert R. Sowder, One Thousand ($1,000.00) Dollars.

"Third. I give and bequeath to my grandson, John Carey Sowder, One Thousand ($1,000.00) Dollars.

"Fourth. I give and bequeath to my son J. Robert Sowder, Five Thousand ($5,000.00) Dollars.

"Fifth. All the rest and residue of my property, whether real, personal or mixed and wherever situated, shall be divided among the following persons in the following proportions, to-wit:

"Gertrude Ione Sowder, daughter, one-fourth (¼) interest.

"Richard D. Sowder, son, one-half (½) interest.

"George A. Sowder, son, one-fourth (¼) interest.

"It is my wish and I so request that all bequests mentioned in this instrument be paid as above directed regardless of any indebtedness to me by any of the legatees, at the time of my demise."

John Carey Sowder is the son of George A. Sowder, and since George survived the testator, John Carey Sowder is not an heir in this estate or an interested party in this appeal. Gertrude Ione Sowder, hereafter referred to as Gertrude, predeceased the testator by one month and four days and died without issue. J. Robert Sowder predeceased the testator and was survived by his one child, Robert R. Sowder, the appellant herein.

During the last years of his life Carey Sowder spent much of his time at Emporia, Kansas, and the evidence reflected that he was in poor health the last few months before his death. His daughter, Gertrude, took her own life on January 24, 1956, and by agreement between Richard and George with the nurses and doctors in charge, Gertrude's suicide and death was not revealed to Carey Sowder.

There is no evidence to indicate whether or not Carey Sowder knew the extent and approximate value of all of his property at the date of the execution of his will, or whether or not there was a substantial increase in the valuation of that property from the date of the execution of the will to the time of his death. However, the records indicate that after payment of debts, expenses of administration and taxes, the net estate for distribution to the heirs, devisees and legatees was approximately $330,000.

Carey Sowder's own records dating from 1925, and his canceled checks, revealed that over all of these years he had given to each of his four children various sums of money which at the time of his death totaled as follows:

| | |
|---|---|
| J. Robert | $74,498.00 |
| Gertrude | 42,475.99 |
| George | 33,315.00 |
| Richard | 27,801.00 |

Included in the above totals were a number of cash gifts made to each of the four children after the execution of the will in the four years before his death as follows:

| | |
|---|---|
| J. Robert | $12,000.00 |
| Gertrude | 14,750.00 |
| George | 12,000.00 |
| Richard | 8,200.00 |

There was no evidence of any ill feeling between Carey Sowder and any of his children or any evidence surrounding the execution of the will or subsequent acts of the testator from which it could be inferred he intended to disinherit any of his children.

The probate court in the order of final settlement and the district court on appeal from that order determined that the one-fourth share of the residuary estate, to which Gertrude would have been entitled had she survived the decedent, should be set aside to the two remaining beneficaries of the residuary clause in the proportion of two-thirds to Richard (appellee) and one-third to George (appellee), and that Robert R. Sowder (appellant) was not entitled to participate therein. The district court also determined that the will was unambiguous; that all of the property of the estate was disposed of by the will; and that the relief sought by Robert R. Sowder was not to the benefit of the estate, but to his own personal benefit, and that under such circumstances attorney fees could not be allowed to him from the estate.

Robert R. Sowder has duly perfected an appeal from each of the foregoing determinations and orders of the district court which were adverse to him.

We shall first consider whether the trial court erred in holding that the residuary gift to Gertrude, which lapsed when she predeceased the testator without issue, passed to the surviving residuary beneficiaries.

The answer to the foregoing question is controlled by the force and effect to be given *Corbett v. Skaggs*, 111 Kan. 380, 207 Pac. 819, decided in 1922. It is apparent that the will of Carey Sowder contained no language whatever regarding the contingency that Gertrude Sowder might die without issue prior to the testator.

The law regarding the devolution of a lapsed portion of a residuary estate is not uniform in this country. For an exhaustive survey of the authorities see 28 A. L. R. 1237; 139 A. L. R. 868; and 36 A. L. R. 2d 1117. The English common law rule, followed by a majority of the courts in this country in the absence of statute, is that the lapsed portion of a residuary devise or legacy does not inure to the benefit of the other residuary devisees or legatees under a residuary devise or bequest to several named persons as tenants in common, who do not take jointly or as members of a class, unless the intention of the testator to that effect clearly appears, but such lapsed portion of the residuary estate is removed from the operation of the residuary clause and becomes intestate property, passing to the heirs of the testator, or his distributees.

In *Corbett v. Skaggs*, supra, the testator, Samuel S. Kincaid, died

without leaving a wife or issue. He left all of his property to ten nephews and nieces, giving specific legacies to each in varying amounts.. In making these specific bequests three of these beneficiaries were specifically denied the right to have any share in the residue and remainder of his estate. The other seven nephews and nieces were made residuary legatees by a residuary clause of the will which read:

"Ninth. I give and bequeath all the rest, residue and remainder of my estate wheresoever the same may be situated to William R. Kincaid, Minnie O. Freemyer, Thomas F. Kincaid, Thomas K. Bell, Mrs. M. E. Morse, Mattie Rinehart and Frances Rinehart, *the same to be divided among them in the same proportion as their former [specific] bequests bear to the whole sum bequeathed them.* Sixty-Three Thousand Dollars ($63,000)." (p. 382.) (Emphasis added.)

Two of the seven residuary beneficiaries died before the testator. No provision was made by the testator in the will as to what disposition should be made of the share of any deceased residuary legatee in the event that they should predecease him. The question in that case involved the proper disposition to be made of the shares of the estate which would have gone to the two persons named in the residuary clause who did not survive the testator. It should be noted in that case both the specific bequests to the two legatees predeceasing the testator and their bequest in the residuary estate lapsed.

In the opinion the court said:

"This court has not heretofore had occasion to decide whether to follow the rule requiring the lapsed share of one of several residuary legatees to be treated as property undisposed of by the will. *We might now avoid deciding that question by holding*—as we think the facts justify—that in any event there are special features of the will under consideration which would require a decision in favor of the surviving residuary legatees. One of them is the circumstance that the residue of the estate is larger than the part disposed of by specific legacies, which gives added force to the presumption that the testator refrained from giving all his property to the residuaries only for the sake of the particular legatees. More important, however, is this consideration: Of the ten nieces and nephews to whom specific legacies were given, seven were also made residuary legatees. In the case of each of the other three the language relating to the specific legacy was followed by the express statement that the legatee 'is to have no share in the residue and remainder of my estate.' Although this provision might be open to interpretation as a mere express statement of what would be implied without it, we regard it as showing affirmatively that the testator did not wish the three legatees referred to to receive more than the specific amount allotted to them. And from his expressly indicating that these three were to receive nothing from the residue it

may be inferred that it was not his purpose that any unnamed heirs should be more favored in this regard. But while in our view these specific provisions of the will plainly show the testator intended that the three legatees who were not included among the residuaries should receive no more of his estate than the sums specifically set apart to them, *we think if these provisions had been omitted the same purpose would have been sufficiently clear. We prefer to rest our decision upon the general principle rather than upon exceptional features of the particular case.*

"*We regard the rule that lapsed shares of deceased residuary legatees shall be treated as intestate property as in direct conflict with the one to which this court is definitely committed—that the actual purpose of the testator, so far as it can be ascertained, must be given effect.* The presumption against intestacy of any part of the estate is a means of carrying out this policy which is disregarded by taking lapsed legacies out of the residue for the benefit of those who would inherit from the decedent in the absence of a will. The reasons for allowing lapsed specific legacies to fall into the residue apply with equal force in favor of allowing all the residue to go to the surviving residuary legatees in the case of the death of one of them, instead of turning over a part of it to persons for whom other provision had been made, or who had not been referred to in the will at all. The statement sometimes made in support of the latter practice—that the share of a deceased residuary legatee cannot fall into the residue because it is itself a part of the residue—appears rather to play upon words than to point out any real difficulty. The result of these views is the approval of the ruling of the court distributing the residue of the estate among the residuary legatees who survived the testator. (pp. 385, 386.) (Emphasis added.)

The appellant concedes in the case before us the residuary beneficiaries were each considered individually by the testator, being named as individuals and apportioned different sums with no different purpose affirmatively shown elsewhere in the instrument. (*Corbett v. Skaggs,* supra.)

The appellant questions what the court meant by the quoted language above which expressly states the specific provisions of the will in *Corbett v. Skaggs,* supra, plainly show the testator intended that the three legatees not included among the residuaries should receive no more of his estate than the sums specifically set apart to them, particularly in view of the court's reference to the rule to which it is committed—"that the actual purpose of the testator, so far as it can be ascertained, must be given effect." Appellant asks:

". . . Did it mean that without any other expressions of intent from the testator the lapsed portion of a residuary estate shall automatically go to the remaining residuary legatees? Or did it mean that the over-all purpose of the testator as gleaned from all possible sources, made it clear that the testator did not intend for any persons other than those named in the residuary clause

to share in the residuary estate, and that accordingly, the Supreme Court of Kansas would follow the rule that the intent of the testator should govern . . ."

It is then argued reference to the rule to which the court is committed reflects that the controlling factor in Kansas shall be the intention of the testator and, accordingly, that the common law rule shall not be followed when the result is inconsistent with that intention. In other words, appellant's position is that the common law rule still persists in Kansas, since the common law rule recognizes the intention of the testator controls when it is inconsistent with the common law rule and clearly appears.

After careful examination we construe *Corbett v. Skaggs*, supra, as firmly holding the share of a residuary legatee who dies without issue before the death of the testator goes to the surviving residuaries, in the absence of some special provision of the will showing a different purpose. The rule that such share shall be disposed of as in the case of intestacy is rejected as being in conflict with the established policy of the court to ascertain and give effect to the actual intention of the maker of the will. (See *Corbett v. Skaggs*, supra, Syl. ¶ 2.)

The court there held as a matter of law, notwithstanding other special language in the will from which the same conclusion might have been reached on the basis of the testator's "expressed intention," the surviving residuary beneficiaries should participate in the lapsed residuary gifts "in the proportion indicated in the will." This necessarily meant that the specified percentage of the residue given to each surviving beneficiary was augmented by and to the extent of his proportionate part of the lapsed residuary gifts.

The intention of the testator to which the court was making reference in so holding was the actual intention of the testator. The presumption against intestacy was said to be a means of carrying out the actual purpose of the testator.

In discussing the companion principle regarding the disposition to be made of lapsed *specific* devises under the statute of wills, this court stated in *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 211 Pac. 146 (1922):

". . . There is no policy in this state to keep any class of property in a favored channel of inheritance as against a will, and when there is a will the presumption is against intestacy . . ." (p. 329.)

The opinion in *Corbett v. Skaggs*, supra, dwelt at some length upon cases from other jurisdictions. The excerpts quoted in the

opinion wherein courts from other jurisdictions severely criticized the common law rule, but felt constrained to follow it, throw further light upon the holding. In criticizing the common law rule the Pennsylvania court said it did not commend itself to sound reasoning, and was a sacrifice of the settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent, shown in the appointment of general residuary legatees, that his next of kin shall not participate in the distribution at all. The common law rule was also said to defeat the testator's intention in almost every case in which it is applied.

The facts in the instant case do not permit a holding based upon the "expressed intention" of the testator in his will. It must be a firm decision rejecting the common law rule. We adhere to the holding in *Corbett v. Skaggs, supra,* as having already rejected the common law rule and it controls the construction of the will in the instant case.

The next question concerns whether extrinsic evidence was competent to show an intention *not expressed* in the will of the testator. The appellees objected to the introduction of any extrinsic evidence of the intention of the testator, and at the close of all the evidence moved to strike such oral testimony as incompetent, irrelevant and immaterial. This motion was overruled. Concerning this ruling the trial court is quoted in the journal entry as follows:

"I am not at all sure that the evidence presented is material or competent in this case. However, I am going to overrule the motion to have it stricken. But, after studying the citations I am of the opinion that the order of the Probate Court was correct, and it is, therefore, affirmed."

The appellant relies upon *Beall v. Hardie,* 177 Kan. 353, 279 P. 2d 276, quoting from the opinion as follows:

". . . In construing a will, the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used . . ." (p. 356.)

Reliance is also placed upon *In re Estate of Dobrovolny,* 182 Kan. 138, 318 P. 2d 1053, which used similar language and stated other rules for the construction of a will where the intention of the testator was obscured by vague and doubtful expressions.

When the testator prepared his will in the instant case all of his children were living. As of that time his will was clear and used

no vague or doubtful expressions. The difficulty in construing the testator's will arises only by reason of the fact that Gertrude died prior to the testator and this fact was withheld from him. It is presumed that the testator knew the extent of his property at the time he made his will, and, absent evidence to the contrary, it must be assumed that he knew the full extent of his property and how much each of the named beneficiaries was to receive under the residuary clause of his will. He specifically stated in his will that *"all bequests mentioned in this instrument be paid"* (Emphasis added) *as directed regardless of any indebtedness to him by. any of the legatees, at the time of his death.*

While it may be said that the testator's will is clear and unambiguous, as of the date of his death it was uncertain on its face in view of the fact that Gertrude predeceased the testator. It therefore required construction which called for application of existing law to the facts and circumstances presented. Under *Corbett v. Skaggs,* supra, the probate and district courts properly construed the will as meaning that in the event Gertrude predeceased the testator without surviving issue, her portion should remain in the residuum to be shared by Richard and George, the two surviving residuary beneficiaries. Under *Corbett v. Skaggs,* supra, no other construction is possible. This law was established by decision in 1922 and has been the law in Kansas since that date.

It is well to note at this point that J. Robert Sowder, who was given a specific bequest of $5,000, also predeceased the testator and was survived by his one child, Robert R. Sowder, the appellant herein. The will says nothing whatever about the disposition to be made of that bequest in the event J. Robert Sowder predeceased the testator. The appellant, Robert R. Sowder, however, received this bequest pursuant to G. S. 1949, 59-615, which has been the law of Kansas since 1939. This statute reads:

"If a devise or bequest is made to an adopted child or any blood relative by lineal descent or within the sixth degree, and such adopted child or blood relative dies before the testator, leaving issue who survive the testator, such issue shall take the same estate which said devisee or legatee would have taken if he had survived, *unless a different disposition is made or required by the will.*" (Emphasis added.)

Under these circumstances Robert R. Sowder was clearly entitled not only to the $1,000 bequest specifically given him by his grandfather's will, but also to the $5,000 specific bequest therein given to his deceased father. There is no controversy on this point. It

could not reasonably be said that the will was ambiguous merely because the testator neglected to provide against this contingency, being content, presumably, to rely upon the disposition which would occur in that event by the settled statutory and decisional laws of Kansas. In this connection, the testator is presumed to have known the law of Kansas at the time he signed his will. (*McConnell v. Hamm,* 16 Kan. 228; *Durboraw v. Durboraw,* 67 Kan. 139, 72 Pac. 566; *Householter v. Householter,* 160 Kan. 614, 164 P. 2d 101; and *In re Estate of Walton,* 183 Kan. 238, 326 P. 2d 264.)

In the case of *In re Estate of Walton,* supra, the testators made a class gift to nephews and nieces without expressly limiting their gift to those living at the execution of the will, and it was held they were presumed to have intended to include after-born nephews and nieces under the Kansas rule. Such intention was attributed to the testators for the reason that:

". . . since they knew or should have known that under our decisions . . . their wills became effective as of the date of their death, such gifts and devises should include all natural children of the persons therein named who, in contemplation of law, were in being on the date of the death of the surviving testator . . ." (p. 244.)

In *Householter v. Householter,* supra, the court stated:

". . . Also courts ordinarily will not indulge in the presumption that the testator acted without advice or learning in drafting his will . . ." (p. 618.)

As a practical matter, it is inconceivable that a testator sufficiently intelligent and experienced to accumulate an estate of over half a million dollars could have been unaware of so obvious and commonplace a possibility of any of his children predeceasing him. Moreover, the law imputes such knowledge to him. Thus, in *Corbett v. Skaggs,* supra, the court stated:

". . . Some cases cited in support of the [English common law] rule are affected by . . . a failure to make a distinction between a legacy which lapses because of death, *which the testator may be regarded as having anticipated,* and one which cannot be given effect because void in itself, a condition he can hardly be deemed to have taken into account . . ." (p. 384.) (Emphasis added.)

As to the appellant's claim that the will is ambiguous and the consequent propriety of showing the real intent of the testator by extrinsic evidence indicating the *inter vivos* gifts made to the testator's children during his life, we must conclude the will is not ambiguous but clearly within the rule of construction already an-

nounced (*Corbett v. Skaggs,* supra), and hence evidence explanatory of intention was incompetent. (*Postlethwaite v. Edson,* 102 Kan. 104, 171 Pac. 769; and see *Hopper v. Sellers,* 91 Kan. 876, 139 Pac. 365; and *Farley v. Fullerton,* 145 Kan. 760, 67 P. 2d 525.) It is apparent the admission of such evidence did not alter the decision of the district court which, after reviewing the authorities cited by counsel, affirmed the order of the probate court.

It should be noted extrinsic evidence, attempting to show the real intention of the testator on the facts and circumstances here presented, must be distinguished from evidence admitted to show the "surrounding facts and circumstances" at the time the will was executed. Such evidence which tends to show the situation of the testator at the time the will was executed, the nature of his business, the extent of his property, his relations with his family or named beneficiaries, may be received if it assists in identifying property or beneficiaries, or to clarify language *used* in the will, but not to change the will. (*Phillipson v. Watson,* 149 Kan. 395, 87 P. 2d 567; *In re Estate of Schnack,* 155 Kan. 861, 130 P. 2d 591; and *In re Estate of Blank,* 182 Kan. 426, 320 P. 2d 775.) Even though the will is clear and unequivocal, extrinsic evidence for purposes collateral to the issue of intent is admissible, since the purpose for which such evidence is accepted does not relate to any ambiguity on the issue of the testator's intent. In *Farley v. Fullerton,* supra, in speaking of the "surrounding facts and circumstances" it was said:

"The fact that extrinsic evidence has to be resorted to in order to ascertain the person intended to be the beneficiary of a bequest does not create an ambiguity as to the intention of the testatrix . . ." (p. 763.)

It follows that *extrinsic* evidence cannot affect the applicability of *Corbett v. Skaggs,* supra, which depends upon the testator's intention gathered from *within the will itself.*

Much of the extrinsic testimony adduced below by the appellant related to facts and circumstances subsequent to the execution of the will in 1950—the suicide of Gertrude in January, 1956, and the decision not to burden the testator with such painful knowledge; also, the gifts made by the testator to his four children between 1925 *and the date of his death in 1956.* Even where a will is admittedly ambiguous, extrinsic evidence competent to be admitted for the purpose of construing a will, all relates to the time of its execution and prior thereto. (*Phillipson v. Watson,* supra; *In re*

*Estate of Schnack,* supra; and see 95 C. J. S., Wills, § 592, p. 779; and *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283.)

No charge is made by the appellant that appellees were guilty of fraud in withholding Gertrude's suicide from her father. Manifestly, such evidence supplies no clue whatever *to the meaning of her father's will* which was executed six years earlier. Appellant's charge that appellees are now attempting to take advantage of their act has no merit. The decision was reached not by the appellees alone but with the concurrence of the testator's nurse and attending physician.

Even were the extrinsic evidence of the testator's *inter vivos* gifts to his four children competent, we fail to perceive how it could help the appellant, who contends that larger gifts were made to J. Robert Sowder and when the testator drew his will, it was the intention of the testator to equalize between his children the gifts which he had made by the manner in which he left his property in the will. This is refuted not only by the evidence that he continued to make unequal gifts to his four children after the execution of his will, but also because such conjectural argument as to the testator's possible testamentary "intention" is irrelevant. In *Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634, the following was quoted:

". . . Great mistakes would probably be committed by any one who should undertake to decide from previous acquaintance with the aged father of a large family how he would desire his property to be divided after his death. The modes of thinking in different men as to the relative claims of widow, sons, daughters and grandchildren, and as to the relative values of various kinds of property, are so opposite; the circumstances of children are often so diverse as to family, connections, property, habits and success, that apart from differences in character, manners and conduct in the several claimants, and from feelings likely to be concealed in the bosom of the father, allowance would have to be made for many considerations besides equal affection for all, and the special advancements which had been made to each . . . It is no condition of this license [to execute a will] that the provisions of a will should be such as to please a jury. If the paper was properly executed, and the testator was of competent sanity, and no undue influence has been established, it is the testator's will, and no tribunal is appointed on earth to inquire whether it ought to have been his will . . ." (p. 751.)

The only extrinsic evidence which is pertinent to the issue on appeal is proof that the testator's residuary estate was worth over $300,000 as contrasted with the comparably nominal ($5,000) bequest to J. Robert Sowder. This demonstrates, insofar as the decedent's testamentary benevolence was concerned, each of the

other three children who was awarded' part of the residuum was drastically favored by the testator over J. Robert Sowder. This, alone, strongly tends to support the normal *Corbett v. Skaggs,* supra, presumption in the instant case. (See *Corbett v. Skaggs,* supra, at page 385, wherein reference is made to the larger part of the estate left in the residue.)

Should the trial court have awarded appellant attorney fees payable out of the decedent's estate?

It has been held where there is ambiguity in the provisions of a will and a real controversy as to its construction, it is competent for the court to allow reasonable attorney fees out of the estate to the defeated as well as the successful party; and in connection with the same subject it has been held that under the provisions of what is now G. S. 1949, 60-3706, the district court in its discretion has authority to tax costs and allow attorney fees and to determine from what source they should be paid, as it may deem right and equitable. (*In re Estate of Walton,* supra; *In re Estate of Reynolds,* 176 Kan. 254, 270 P. 2d 229; *Singer v. Taylor,* 91 Kan. 190, 137 Pac. 931; and *Hurst v. Weaver,* 75 Kan. 758, 763, 90 Pac. 297.)

The appellees contend that under *Corbett v. Skaggs,* supra, the decedent's will is unambiguous and the appellees are clearly entitled as surviving residuary beneficiaries to share Gertrude's lapsed residual gift, and that the extrinsic evidence adduced by the appellant neither proves nor tends to prove any testamentary intention at variance with that revealed within the four corners of the will itself. They further argue appellant has pursued this litigation solely for his own benefit, not for the benefit of the estate. Support is found in *Householter v. Householter,* supra, where the appellees were forced involuntarily to uphold a will which did not appear on its face to be ambiguous. No estate or trust fund was benefited by the litigation. The court held the appellant sought to recover for his personal benefit—not for the benefit of all parties incidentally concerned with the litigation. The court said: "In such cases attorneys' fees ordinarily are not properly allowed to counsel for the unsuccessful party." (p. 620.)

In the case of *In re Estate of Reynolds,* supra, one of the defendants sought to have a will construed upon a point which was clear and needed no construction, and it was held the trial court was justified in denying the attorneys' fees of her counsel and assessing them against the funds of the estate.

Here the will was not ambiguous but did require construction. Appellees contend appellant could never have entertained any rational expectation of prevailing herein save by persuading this court to overrule *Corbett v. Skaggs, supra.*

We view the question presented as rather close, but are inclined to the opinion that the appellant is entitled to attorneys' fees of his counsel payable out of the estate. Whether this court would adhere to *Corbett v. Skaggs, supra,* on the facts here presented which call for a firm rejection of the common law rule, without any special language in the will from which the same conclusion might have been reached on the basis of the testator's "expressed intention," was, in view of the overwhelming weight of authority which follows the common law rule, unless otherwise abrogated by statute, a fair question to have determined. The will even though not ambiguous was thus *subject to construction on a question of law.*

The rule applicable to the allowance of attorney fees is summarized in 96 C. J. S., Wills, § 1096, p. 809, as follows:

". . . Likewise, a complainant may not be entitled to counsel fees where the will is not ambiguous *or subject to construction,* or where complainant's action is for his own benefit and not for the benefit of the trust estate, . . ." (Emphasis added.)

Since the will is subject to construction on a question of law in the instant case, appellant is entitled to an allowance with which to pay the fees of his counsel in this matter. Such allowance is authorized upon the theory that it is a benefit to the estate as an entity to have a question of law determined where there is doubt as to the proper construction to be placed upon a will.

The judgment of the trial court is affirmed with directions that the trial court make a proper allowance to appellant with which to pay the attorneys' fees of his counsel and assess them against the funds of the estate.